Sharon N. **RAGLAND**, Plaintiff–Appellant,

v.

Donna E. **SHALALA** *, Secretary of Health and Human Services, Defendant–Appellee.

No. 92–6274.

United States Court of Appeals, Tenth Circuit.

April 28, 1993.

Paul F. McTighe, Jr., Tulsa, OK, for plaintiff-appellant.

Sullivan, pursuant to Fed.R.App.P. 43(c)(1).

* Donna E. Shalala is substituted for former Secretary of Health and Human Services Louis W.

Joe Heaton, U.S. Atty., Gayla Fuller, Chief Counsel, Region IV, Christopher Carillo, Asst. Regional Counsel, Office of the Gen. Counsel, U.S. Dept. of H.H.S., Dallas, TX, for defendant-appellee.

Before McKAY, Chief Judge, and HOLLOWAY and BARRETT, Circuit Judges.

HOLLOWAY, Senior Circuit Judge.

Plaintiff Sharon N. Ragland appeals from a district court order that affirmed the Secretary of Health and Human Services' decision to deny her application for supplemental security income benefits under Title II of the Social Security Act.[1] It is our responsibility, in assessing the factual and legal bases for the Secretary's challenged decision, to review the record "to determine whether the findings are supported by substantial evidence and whether the Secretary applied correct legal standards." *Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir.1991).

**I**

Plaintiff's disability claim is based on a traumatic spinal injury that necessitated four lower back surgeries, the last performed in 1985. Her lumbosacral spine is now fixated with implanted metal rods, and further corrective or palliative surgery has evidently been ruled out. *See* R. Vol. II at 27–28, 102. Despite the significant amount of surgical intervention involved, the only medical documentation in this case consists of a consultative examination report prepared at the Secretary's request in August of 1989 by Dr. Gordon Strom, *id.* at 102–107, and a two-page record of emergency room treatment for a relatively minor incident of physical trauma to plaintiff's back in January of the same year, *id.* at 100–01.

At her March 30, 1990, hearing before the administrative law judge (ALJ), plaintiff

testified that she experiences stinging, burning pain radiating down both legs a majority of the time, and that her related physical limitations preclude standing longer than thirty minutes, sitting more than about twenty minutes, walking farther than three city blocks, or lifting anything weighing over five pounds. *Id.* at 29–30. Dr. Strom, whose physical examination of plaintiff indicated "significant back disease,"[2] acknowledged plaintiff's various exertional limitations as being "advised by her physicians," and recommended confirming them "by obtaining records from her physician in Atlanta and if possible x-rays of her lumbosacral spine." *Id.* at 104. The records and x-rays were never obtained, however, despite the fact that, even before she was examined by Dr. Strom, plaintiff provided the Secretary with the information necessary to contact several treating physicians and hospitals in Georgia, where she lived during the period of her active treatment. *See id.* at 60–61.

The Secretary has established a five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir.1988) (discussing five steps in detail). Employing this procedure, the ALJ initially found that plaintiff (1) was not performing substantial gainful activity; (2) had a severe impairment; (3) did not, however, have a listed impairment; and (4) was unable to perform her past relevant work, which involved strenuous physical activity. These findings are not at issue. Rather, the focus of this appeal is on step five, where the burden shifted to the Secretary to establish that, in light of plaintiff's residual functional capacity (RFC), age, education, and work experience, she could still perform other jobs existing in significant numbers in the national economy. In ruling for the Secretary at this final step, the ALJ found plaintiff functionally capable of the full range of sedentary work, *see* 20 C.F.R. § 416.967(a), and then relied exclusively on

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

2. Dr. Strom's pertinent findings included "an obvious significant surgical defect with deformity of the lumbar spine at the lumbosacral junc-

tion[,] ... bilateral paraspinous tenderness and obvious spasm[,] ... bilateral positive straight leg raising test in both the sitting and lying positions[,] ... complain[ts] of pain radiating in a knife like fashion from [t]he hips back into the inner aspect of her left thigh and leg[,] ... [and] a 1.5 cm difference between the right thigh and the [smaller] left thigh." *Id.* at 103–04.

the pertinent medical-vocational guideline (grid), 20 C.F.R., Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 201.28, which directs a determination of nondisability.

Plaintiff challenges this determination in four interrelated respects, arguing it is not supported by substantial evidence, erroneously relies on the grids, fails to take into account plaintiff's evidence of pain, and lacks the necessary support of expert vocational testimony. For the reasons expressed below, we hold that the existing record and findings will not support the denial of benefits on the ALJ's stated rationale and, therefore, we reverse.

## II

Our approach to this case follows two fixed guideposts. The first, to which we have already referred, is the placement of the burden of proof on the Secretary at step five. The second is the principle that "[t]he grids should not be applied conclusively in a particular case ... unless the claimant could perform the full range of work required of [the pertinent RFC] category on a daily basis and unless the claimant possesses the physical capacities to perform most of the jobs in that range." *Hargis v. Sullivan,* 945 F.2d 1482, 1490 (10th Cir.1991); *see also Trimiar v. Sullivan,* 966 F.2d 1326, 1332 (10th Cir.1992) (exclusive reliance on grid proper only if claimant's characteristics precisely match criteria of particular rule). In this connection, "resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain." *Hargis,* 945 F.2d at 1490. Accordingly, we assess the record to determine whether the Secretary presented substantial evidence demonstrating that, notwithstanding her physical impairments and alleged pain, plaintiff could perform the full range of sedentary work and would qualify for most of the jobs falling within that RFC category. Absent such evidence, the Secretary cannot satisfy the burden at step five without producing expert vocational testimo-

ny or other similar evidence to establish the existence of significant work within the claimant's capabilities. *See id.* at 1491; *see also Trimiar,* 966 F.2d at 1328 n. 5.

Our principal concern is with the ALJ's treatment of plaintiff's asserted inability to sit for prolonged periods of time. Under the regulations, "a sedentary job is *defined as one which involves sitting.*" 20 C.F.R. § 404.1567(a) (emphasis added). The Secretary estimates that an eight-hour day of sedentary work should generally involve approximately six hours of sitting. Soc.Sec.Rul. 83–10. It is therefore very troubling that of the several physical limitations at issue in this case, the ALJ made no specific findings whatsoever regarding plaintiff's alleged difficulty in sitting.

The only pertinent medical evidence in the record consists of Dr. Strom's report, wherein he recited that "[plaintiff] has been advised by her physicians to refrain from ... prolonged ... sitting," R. Vol. II at 104, and that "she was told that she ... was limited as far as ... the types of jobs that she could perform," *id.* at 102. Dr. Strom did not contradict, criticize, or question the content or source of this professional advice. As already noted, he did recommend confirmation through relevant documentation, which was never obtained. Because it is the Secretary who at this stage in the evaluative sequence bears the burden of demonstrating plaintiff's ability to perform the full range of sedentary work, the evident incompleteness of the medical record—which supports plaintiff, as far as it goes—weighs heavily against the Secretary.[3] *See Gatson v. Bowen,* 838 F.2d 442, 448 (10th Cir.1988); *see also Thompson v. Sullivan,* 987 F.2d. 1482, 1491 (10th Cir.1993) (step-five burden is improperly shifted onto claimant if RFC level urged by counsel for Secretary is adopted by ALJ simply because of absence of contraindication in inconclusive medical record).

Unlike the ALJ, the magistrate judge expressly addressed plaintiff's asserted sitting

---

**3.** The inadequacy of the primary medical record also impacts our view of the optimistic RFC determinations of the medical reviewer. *See* R.Vol. II at 84–91. What little adverse value these conclusory determinations might otherwise have, *see Gatson v. Bowen,* 838 F.2d 442, 448 (10th Cir.1988) (reliability of reviewer's RFC no-

tations suspect when unsupported by adequate explanation or firsthand examination of claimant), is compromised further by the fact that the only substantial data available for review consisted of the medical report of Dr. Strom, whose own favorable, if inconclusive, statements are entitled to more weight than those of the review-

limitations and discounted it for several reasons. First, the magistrate judge noted that "[a]lthough Plaintiff testified she could not sit for more than 20 minutes, she also stated that she likes to read and watch television, both sedentary activities." R.Vol. I at 14 (citing to R.Vol. II at 70). However, as the record provides no indication that plaintiff is able to engage in these activities for extended periods in a *seated* posture appropriate to sedentary employment, as opposed to, for example, requiring a partially or fully reclined position, this evidence has no probative value on the question at hand. *Cf. Allen v. Sullivan,* 977 F.2d 385, 388 (7th Cir.1992) (noting that claimant spends much of his day watching television in part *because* prolonged sitting causes him discomfort).

The magistrate judge also pointed out that plaintiff "sits down to relieve back pain caused by standing." R.Vol. I at 14. The record citation accompanying this observation directs us to plaintiff's statement that while she cooks, she has "to sit more often because of the pain in [her] legs and back." R.Vol. II at 68. The fact that plaintiff may intermit a tiring or painful upright task with periods of seated rest (of unspecified duration and posture) does not entail any particular answer to the separate question whether she can remain seated for a prolonged period of time.[4] Finally, the magistrate judge noted that plaintiff "did not report difficulty driving (which requires sitting)." R.Vol. I at 15. Actually, plaintiff stated on her disability report that she "can drive only 30 miles," R.Vol. II at 62, which is fairly consistent with the sitting limitation asserted throughout these proceedings.

The magistrate judge's efforts to supply the missing administrative findings regarding plaintiff's asserted sitting limitation cannot

be affirmed on our record. Therefore, because the ALJ concluded that plaintiff could perform sedentary work, and consequently relied on the grids to find her nondisabled, without first expressly determining whether and to what extent her demonstrated impairment interfered with the *primary physical demand* of such work, the Secretary's decision must be reversed.

### III

We add these observations to further explain our disposition. First of all, the ALJ and the magistrate judge discounted plaintiff's allegations regarding lifting limitations and, more importantly, appeared to consider her general credibility compromised, based on a claims representative's notation following an interview that "when leaving the office, claimant picked up her four year old child 'without difficulty.'" R. Vol. II at 9; R.Vol. I at 14; *see* R.Vol. II at 66. This observation was made on July 10, 1989, when, according to otherwise uncontroverted testimony, the "four year old child" was actually a toddler under (or just) two years of age. *See* R.Vol. II at 31, 34, 35 (at the hearing eight months later, plaintiff testified her younger child was then two and a half (her older child was thirteen)). Given this discrepancy, the isolated, conclusory statement of the claims representative should not have played a role in the analysis of this case without some further development of the pertinent facts.

The ALJ rejected plaintiff's assertions of disabling pain because she does not "take any medication for pain relief on a regular basis," has not "sought any significant medical treatment within the past several years," and, though "[i]t may well be that claimant does require assistance with heavier aspects of her housework, ... overall it appears that

---

er in any event (though still less than the [unobtained] opinions of plaintiff's treating physicians), *see Talbot v. Heckler,* 814 F.2d 1456, 1463 (10th Cir.1987).

**4.** Indeed, it is commonplace in social security case law for persons who cannot sit or stand for long periods to obtain some relief in alternating these positions. *See, e.g., Talbot,* 814 F.2d at 1463; *DeLorme v. Sullivan,* 924 F.2d 841, 845 (9th Cir.1991); *Burton v. Secretary of Health & Human Servs.,* 893 F.2d 821, 822, 824 (6th Cir. 1990). In fact, plaintiff indicated that she will

sometimes *stand* briefly to ease the pain of prolonged *sitting*, though she does not know whether she could perform a job permitting her to sit and stand at will. *See* R.Vol. II at 33. Significantly, even where such alternation of position is a possibility, relying on the grids for light or sedentary work is inappropriate, and the ALJ must consult a vocational expert before making a determination at step five. *See Talbot,* 814 F.2d at 1463–64 & n. 5; *DeLorme,* 924 F.2d at 850; *Wages v. Secretary of Health & Human Servs.,* 755 F.2d 495, 498 (6th Cir.1985).

she is able to perform the usual tasks of a housewife." *Id.* at 9. While these are all, generally speaking, pertinent considerations in determining the credibility of a claimant's pain allegations, *see Hargis,* 945 F.2d at 1489 (quoting *Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir.1988)), there are some complications with their particular application here that have not been adequately addressed.

Before relying on a claimant's failure to pursue treatment or take medication as support for rejecting allegations of pain, the ALJ should consider "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." *Frey v. Bowen,* 816 F.2d 508, 517 (10th Cir.1987). The ALJ did not find, nor is there any medical evidence, that further treatment or medication would benefit plaintiff at all, much less restore her ability to work. Indeed, the only professional reference to the matter is Dr. Strom's uncritical recitation of the advice plaintiff allegedly received from her treating physician following her last surgery in Georgia, that "nothing further could be done." R. Vol. II at 102.

Furthermore, plaintiff testified that she has not had money or insurance for medical treatment since 1985, when she was divorced from Donald Benson. *Id.* at 30–31. She is at present living alone with her two children and dependent upon welfare for her income. *Id.* at 34–35. For pain medication, plaintiff testified that she must rely on friends, who "get pain medication and they give it to [her] ... Usually like Tylox–4's or Demerol, something strong. The strongest [she] can get and if it's not real strong, [she will] take it and double up on it and use it anyway." *Id.* at 31. Under the circumstances, the ALJ should have expressly considered the medical benefit and justifiable excuse factors specified in *Frey* before rejecting plaintiff's pain allegations based on her failure to pursue treatment and medication options more zealously.

As for daily activities, the record reflects significant limitations on the nature, duration, and amount of household tasks plaintiff can perform on a daily basis. *See* R.Vol. II at 31–32, 34–35, 62, 67–69, 73, 109. Thus, plaintiff's daily activities do not furnish substantial evidence discrediting her allegations of pain and demonstrating her nondisability. *See Frey,* 816 F.2d at 516–17; *Cavitt v. Schweiker,* 704 F.2d 1193, 1195 (10th Cir. 1983); *Hedstrom v. Sullivan,* 783 F.Supp. 553, 557–58 (D.Colo.1992).

**IV**

We emphasize that even a proper finding that plaintiff is not disabled solely by virtue of her pain (addressing the points discussed in section III above) would not have resolved this case in the Secretary's favor. The Secretary would still have had to establish that plaintiff retains the exertional and nonexertional capacity to perform a significant number of jobs in the national economy, despite (1) the level of nondisabling pain she suffers (if it partially diminishes work capacity), and (2) the type and degree of functional limitations (sitting, standing, lifting, etc.) that restrict her occupational opportunities. In this regard, what we have said in section II of this opinion concerning the inadequacy of the record developed to satisfy the Secretary's step five burden, the inappropriateness of the ALJ's reliance on the grids, and the need for expert vocational testimony all undercuts the Secretary's disposition of plaintiff's claim.

When a decision of the Secretary is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits. *Emory v. Sullivan,* 936 F.2d 1092, 1095 (10th Cir.1991); *Harris v. Secretary of Health & Human Servs.,* 821 F.2d 541, 544–45 (10th Cir.1987). In light of the Secretary's patent failure to satisfy the burden of proof at step five, and the long delay that has already occurred as a result of the Secretary's erroneous disposition of the proceedings, we exercise our discretionary authority to remand for an immediate award of benefits.

The judgment of the district court is accordingly REVERSED, and the cause is REMANDED to the Secretary for an award of benefits consistent with this opinion.