UNITED STATES COURT OF APPEALS
**Filed 6/6/96**
FOR THE TENTH CIRCUIT

DONNA M. JACKSON,

      Plaintiff-Appellant,

v.

SHIRLEY S. CHATER, Commissioner,
Social Security Administration,[*]

      Defendant-Appellee.

No. 95-7111
(D.C. No. CV-94-392)
(E.D. Okla.)

ORDER AND JUDGMENT[**]

Before ANDERSON, LOGAN, and MURPHY, Circuit Judges.

[*]      Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. Pursuant to Fed. R. App. Proc. 43(c), Shirley S. Chater, Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. Although we have substituted the Commissioner for the Secretary in the caption, in the text we continue to refer to the Secretary because she was the appropriate party at the time of the underlying decision.

[**]      This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34 (f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Claimant Donna M. Jackson appeals from the district court's order affirming the decision of the Secretary of Health and Human Services denying her disability and supplemental security income (SSI) benefits. Jackson applied for disability and SSI benefits following an injury to her back in May of 1991. See II Record at 41, 83, 91, 96. Throughout the process, from the time she first applied through her request for a hearing, Jackson alleged disability because of her back, depression, and headaches. Id. at 83-86 (initial application for SSI, filed August 26, 1991), 96-99 (second application for SSI, filed July 7, 1992), 148-53 ("Disability Report," signed June 28, 1992), 162-65 ("Reconsideration Disability Report," signed October 17, 1992), 168-69 ("Claimant's Statement When Request For Hearing Is Filed And The Issue Is Disability," signed December 17, 1992).

The bulk of the medical evidence in the record relates to Jackson's back injury and consists primarily of the records from her treating orthopedic surgeon, Dr. Livingston. See II Record at 170-231. Only two documents relate to problems with Jackson's hands. The first consists of a doctor's handwritten notes which include a reference to a diagnosis of "ganglion left thumb" and indicate that Jackson had surgery to correct the problem. Id. at 195. The second document, which deals with Jackson's hands as well her back, is a letter

2

written by Dr. Ellis, who examined Jackson at her attorney's request for workers' compensation purposes. Id. at 215-19. In his letter, Dr. Ellis reviews some of Jackson's surgical history (including surgery on her wrists following an unspecified injury to her right wrist in 1984); recounts Jackson's "current complaints" concerning her wrists ("pain in the radial aspect of her wrist" and "weakness in both hands"); indicates that his examination of Jackson's hands revealed "weakness on grip strength" and "decreased movement" in both hands; and, includes a diagnosis of tendinitis in both wrists. Id. at 215-17. The report also states, in a section devoted to the rationale for his opinion that Jackson is permanently and totally disabled, that "[t]he problems with her hands will make repetitive sorting, mailing, writing or typing very difficult." Id. at 218.

Following the established five-step sequential evaluation process, see Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988), the administrative law judge (ALJ) found that Jackson (1) was not performing substantial gainful activity, (2) had severe limitations due to degenerative disease of the lumbar spine, (3) did not, however, have a listed impairment, and (4) was unable to perform her past relevant work. II Record at 21. At step five, the ALJ found that Jackson had the residual functional capacity (RFC) for sedentary work, limited only by an inability to bend and stoop repetitively and the need to change postural positions every fifteen to twenty minutes. Id. Then using the medical vocational guidelines (grids) as a framework for decision making, the ALJ relied on the testimony of a vocational expert to find Jackson not disabled. Id. at 20.

Jackson's appeal revolves around the ALJ's treatment of the evidence regarding what she characterizes in her brief as a "manipulative impairment." Specifically, Jackson contends (1) that the ALJ's RFC assessment is not supported by substantial evidence because it does not properly account for the so-called manipulative impairment from which she allegedly suffers, and (2) that the ALJ's finding that a significant number of jobs were available in the national economy which Jackson could perform is not supported by substantial evidence because the ALJ erroneously relied on the grids and on vocational expert testimony solicited through a hypothetical question that did not include manipulative limitations.

The burden of proving a disability within the meaning of the Social Security Act rests with the claimant. Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991). "'Once the claimant makes a prima facie showing of disability that prevents his engaging in his prior work activity, however, the burden of going forward shifts to the Secretary, who must show that the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy.'" Id. (quoting Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984)). The Secretary satisfies this step-five burden if her decision is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197,

4

229 (1938))). In reviewing the Secretary's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency. Id. In addition, "the failure to apply proper legal standards may, under appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).

We begin our analysis by noting that, contrary to various assertions in Jackson's brief, the ALJ did not "fail to consider" the evidence regarding Jackson's wrists, nor did he conclude that her alleged wrist impairment imposed no limitation on her ability to work. In his opinion, the ALJ specifically discussed Dr. Ellis' report and concluded that the references to Jackson's reduced grip strength and range of motion were "insufficient to establish the presence of an impairment which would impose exertional or nonexertional limitations in addition to those [already included in his RFC assessment]." II Record at 19 (emphasis supplied). Weighing the medical evidence, and discounting it for specific and legitimate reasons, is clearly within the province of the ALJ. See Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). Here, the ALJ noted that Jackson had sought no ongoing private treatment for her tendinitis, and characterized Dr. Ellis' references to reduced grip strength and range of motion as "vague and unquantified." II Record at 19. He further noted that Dr. Ellis was an examining physician, "retained by claimant's counsel for the specific purposes [sic] of establishing disability for workers compensation purposes." Id. at 20. All are appropriate considerations in determining what weight to give a medical

5

opinion. See Goatcher v. United States Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995). Jackson does not appear to challenge the ALJ's conclusion that Dr. Ellis' findings are vague and unquantified; on the contrary, she practically concedes as much in her brief. See Appellant's Brief at 15.

Our review of the record reveals substantial evidence to support the ALJ's conclusion that any wrist impairment from which Jackson suffers does not impose exertional or nonexertional limitations in addition to those already imposed by her back impairment. We find that support in Jackson's own testimony. When asked at the hearing about any "problems with her hands," Jackson testified only as to weakness in her wrists. II Record at 53-54. By way of explanation, she testified that when she picks up a cup of coffee, or anything of at least comparable weight, she tries to use two hands to prevent "los[ing] control" with her right hand. Id. at 54. She did not mention any loss of fine dexterity, any difficulty in repetitive movements, or any pain.[1] Cf. II Record at 80-81 (where Jackson's attorney, in questioning the vocational expert about the vocational implications of Jackson's wrist impairment, asked only about the impact of exertional limitations in lifting anything

_____

[1]     We note that the record includes what the Secretary urges us to regard as evidence on these matters to the contrary, in that Jackson identifies "cross stitch" as one of her hobbies. See II Record at 151, 159. We decline to rely on this fact as support for our conclusion, however, there being no evidence in the record as to how frequently Jackson engages in this activity or for what length of time on any given occasion. See Ragland v. Shalala, 992 F.2d 1056, 1059 (10th Cir. 1993)(evidence that claimant likes to read and watch television of no probative value as to claimant's capacity for sedentary work since record provided no indication that claimant was able to engage in these activities for extended periods in a seated position).

heavier than a cup of coffee). Furthermore, in the various forms Jackson filled out during the course of the administrative process, Jackson never mentioned any problem related to her wrists or hands at all. See id. at 83, 96, 148, 162, 168. Under these circumstances, we cannot say that the ALJ erred in concluding that any wrist impairment resulted in a purely exertional limitation which was already sufficiently accounted for in an RFC assessment which limited Jackson to sedentary work. Such a finding is completely consistent with Jackson's own testimony.

Jackson maintains that because the ALJ was at step five of the sequential analysis, he was required to have specific evidence that Jackson could perform the manipulative demands of sedentary work. Appellant's brief at 13. We disagree. The ALJ did not find that Jackson suffered from a "manipulative impairment." He found only that her wrist impairment did not impose limitations in addition to those imposed by her back and, as we have already indicated, substantial evidence supports his finding. See Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990)(Secretary satisfied step-five burden where her decisions to discount certain alleged impairments, in one instance because claimant had presented "little or no objective [corroborating] evidence," were supported by substantial evidence).

In support of her proposition that the ALJ had to have specific evidence as to her manipulative capabilities, Jackson relies heavily on Thompson, 987 F.2d 1482, and cites Ragland, 992 F.2d 1056, both cases where this court found that the Secretary fell short of

7

satisfying her step-five burden. Neither case supports that conclusion in this instance. Unlike the ALJ in Thompson,[2] the ALJ here did not face a situation where he had "no evidence upon which to make a finding as to RFC" and thus relied on "the absence of contraindication in the medical records." See Thompson, 987 F.2d at 1491 (emphasis omitted). The ALJ in this case had evidence, some of which he chose to discount for reasons which were appropriate and supported by the record. The ALJ in Ragland failed to sustain his step-five burden when, in a case where records from plaintiff's treating physicians were never obtained despite significant medical intervention including four back surgeries and where plaintiff specifically testified that she had difficulty sitting, the ALJ made no finding whatsoever regarding this alleged difficulty. In the case before us, the ALJ did make a specific finding regarding the issue of a wrist impairment and, although not the one Jackson wishes she had now, it enjoys substantial support in the record.

Jackson also challenges the ALJ's conclusion that a significant number of jobs are available in the national economy which Jackson can perform, arguing first that the ALJ

---

[2]    In Thompson, the claimant alleged disability due to back problems and pain. She testified at her benefits hearing, which lasted only ten minutes, that she was unable to drive, do housework or shopping, or stand, walk, or sit for any period of time because of back and leg pain. She also testified that she could not sit for even two hours out of an eight-hour day. The medical records concerning her back were inconclusive because she discontinued treatment before a definitive diagnosis was made due to an inability to pay. On that record, without any vocational testimony, and using the grids, the ALJ found that the claimant retained the residual functional capacity to do the full range of sedentary work and was not disabled.

erroneously relied on the grids. The record clearly shows that, following the law in this circuit, see Hargis v. Sullivan, 945 F.2d at 1490, the ALJ used the grids in this case simply as a framework for decision making. See II Record at 20. He did not apply the grids conclusively, but instead relied on expert vocational testimony. Id.

Jackson also objects to the ALJ's reliance on the expert's testimony because the ALJ failed to incorporate a manipulative limitation in the hypothetical question posed to the expert. A hypothetical inquiry in this context need only include those impairments and limitations borne out by the evidentiary record. Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995). Here, we have affirmed the ALJ's conclusions concerning the impact of Jackson's wrists on her RFC. Because that finding is accurately reflected in the ALJ's hypothetical inquiry, the expert's testimony provided substantial evidentiary support for the ALJ's conclusion.

The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.

Entered for the Court

Michael R. Murphy
Circuit Judge

9