**Kay MARTINEZ, Plaintiff,**

v.

**Kenneth S. APFEL,[1] Commissioner of Social Security, Defendant.**

**No. 96–K–1464.**

United States District Court,
D. Colorado.

Aug. 26, 1998.

1. Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103–296, 108 Stat. 1464 (1994), the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995. In accordance with § 106(d) of that law, Kenneth S. Apfel, Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the Defendant in this action. (Donna E. Shalala replaced Shirley S. Chater as Secretary of Health and Human Services.) Accordingly, the Defendant in this case should now be reflected as "KENNETH S. APFEL, Commissioner of Social Security."

Robert Kelvin Gruber, Denver, CO, for Plaintiff.

Robert D. Clark, Asst. U.S. Atty., Carol S. Prescott, Asst. Regional Counsel, Denver, CO, for Defendant.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

Plaintiff, Kay Martinez, appeals from a final decision by the Social Security Commissioner denying her benefits under Title XVI of the Social Security Act (the Act). This denial was based on an Administrative Law Judge's (ALJ's) finding that Martinez had the residual functional capacity to perform a significant number of jobs in the national economy. Jurisdiction exists under 42 U.S.C. sec. 402(g).

Martinez asserts two grounds for her appeal. First, she argues the ALJ's conclusion that she could perform a full range of sedentary jobs is not supported by substantial evidence. Second, Martinez contends the ALJ's exclusive reliance on the Medical Vocational Grids (set forth at 20 C.F.R. 404 Subpt. P, App. 2, Table No. 1) to determine that there is substantial alternative work available for her was legally inappropriate. Accordingly, Martinez concludes the ALJ's determination that she has the residual functional capacity to perform a significant number of jobs in the national economy is not supported by substantial evidence and is subject to reversal. Because the record does not support exclusive reliance on the grids, I remand the case to the Commissioner for further development of the record consistent with this opinion.

### I. BACKGROUND

Kay Martinez, is an unskilled laborer with a high school education and minimal vocational training. (R. at 217–218.) She lives in Denver, Colorado. Martinez filed a claim for disability benefits on December 27, 1993, asserting that she had been unable to engage in substantial gainful activity since December 1, 1993 due to bilateral pain in her hips and osteoporosis in her knees. (R. at 106.) At the time of filing, she was thirty-five years old.

Martinez received a bilateral total hip arthroplasty (replacement of both hips) on March 8, 1991. (R. at 93–94.) This operation was necessary because of five years of bilateral avascular necrosis of the hips which deformed her femoral heads causing the joints to collapse. (R. at 93.) Denver General Hospital (DGH) resident, Dr. Joseph Hsin, performed the surgery which was without complications. *Id.* Martinez continued to do well postoperatively. *Id.* Dr. Hsin instructed her to refrain from weight bearing on both of her lower extremities for two months following the operation. *Id.* Dr. Hsin also noted at this time that one of Martinez' legs was one centimeter shorter than the other. *Id.* On August 20, 1991, five months after her hip replacements, Martinez had arthroscopic surgery to repair a fracture and remove the loose bodies in her left knee. (R. at 95.)

Martinez' progress after her 1991 surgeries was monitored by several physicians at DGH orthopedic clinic, whom she visited repeatedly for continuing pain. In late 1991 and early 1992, DGH doctors Lile and Taubman examined Martinez; finding her hip replacements were unchanged and without signs of loosening or fracture, but also finding diffused osteoporosis and small osteophytes in both knees. (R. at 106.)

On March 25, 1993, Martinez started working at Safeway in a sheltered capacity. Due to her pain she, unlike the other courtesy clerks, was not required to push grocery carts or help customers to their vehicles. (R. at 209.) During her employment with Safeway, she continued to see doctors regarding pain in her hips and knees. (R. at 99–103.) Martinez went to DGH for a hip and knee examination in April of 1993 where Dr. Motz found that her hip prostheses were in good position with no loosening, but she had patchy osteoporosis, erosive changes by the patella, and the possibility of osteochondritis in her left knee. (R. at 105.) In September, 1993, DGH physician, Dr. Wolfe, conducted another orthopedic examination and found the hip prostheses were in place, but there was possible loosening and a definite protru-

sion of the right acetabular component. (R. at 104.) He questioned previous fracture and surgical repair of Martinez' left knee and noted that aggressive osteoporosis and avascular necrosis could follow such a procedure. (*Id.*) He also found that the left knee had definite osteochondral loose bodies. (*Id.*) He then wrote inter-office correspondence, recommending that Martinez maintain "a sedentary job where she is not on her feet all day . . . and also recommend[ed] no heavy lifting/carrying, etc." (R. at 111.) On November 23, 1993, Martinez determined she was unable to continue her employment at Safeway. She took a leave of absence due to pain and did not return.

Martinez applied for social security benefits on December 27, 1993. She was referred by Disability Specialist Sylvia Percy to Dr. J. F. Prinzing, who conducted an orthopedic examination on March 4, 1994. Dr. Prinzing found that, according to x-rays, the hip prostheses were satisfactorily aligned, with minimal lucency along the end of the right prostheses, and minimal bone fragments on the left hip joint. He also found that Martinez had some limitation of motion to external rotation and flexion of the right hip, as compared with the left, but he detected no chronic or acute inflammation in the areas of previous surgery. (R. at 118–120.) As part of the application process, Martinez underwent a Residual Physical Functional Capacity evaluation in May, 1994. (R. at 85–92.) The evaluation identified that Martinez was subject to environmental limitations; she must avoid jobs involving concentrated exposure to extreme cold, wetness and vibration, and any exposure to hazards including machinery and heights. (R. at 89.)

Throughout 1994, Martinez performed all of her household cleaning chores, including laundry, vacuuming, cooking and dusting. (R. at 68–69 and 77.) She was also able to perform all of her personal maintenance without assistance. (R. at 69 and 73.) During 1994 Martinez worked at Sam's Club for one week. She was unable to tolerate the walk into the freezer and was advised by Dr. Motz to stop working there. (R. at 209.) In November, 1994, she started working at Sunny Skies Day Care as a part time teacher's aid. (R. at 209)

Martinez continued to work at Sunny Skies until she took a leave of absence in March, 1995. On April 3, 1995, she received left total knee replacement due to avascular necrosis of the knee. She "was discharged to home . . . in excellent condition." (R. at 137.) Dr. Montgomery anticipated she would probably be unable to work for three to four months after the operation, but "she will probably always qualify . . . [for a] sedentary job with mild ambulation." (R. at 127.)

At the May 17, 1995 administrative hearing, one month after Martinez' surgery, the ALJ heard testimony from Martinez and her mother, Mary Hall. Martinez' testimony focused on her work history during her illness, her day-to-day activities and her pain. (R. at 217–42.) She testified that her pain kept her awake, and that medication did not mask the pain. (R. at 229.) Despite her pain, she was able to walk without hurting and climb stairs without stopping, until just before her recent knee operation. (R. at 230.) She was able to sit comfortably at times, but found that sitting for long time periods was uncomfortable. (R. at 231.) She also stated, contrary to her written reports dated as late as June 24, 1994, (R. at 69 and 73), that she was unable to perform her personal grooming without assistance, even before her most recent surgery, (R. at 233). Additionally, she testified that her pain resulted in headaches and the inability to concentrate. (R. at 328.)

Hall's testimony focused on her daughter's daily activities. (R. at 242–245.) She asserted, contrary to written reports, (R. at 68–69 and 77,) that since Martinez' 1991 hip surgery, she had not been able to perform most of the household chores. (R. at 243–244.)

In her written decision, the ALJ found that Martinez did not meet the disability insured status based on a strict application of the grids. (R. at 24, ALJ Findings 8 and 9.) The ALJ also found that Martinez had not engaged in gainful activity since November 29, 1993; and that she was unable to perform her past relevant work, which was light, rather than sedentary, work. (R. at 23, ALJ Findings 1, 4 and 5.)

Additionally, the ALJ found that, although Martinez' impairments were considered severe for Social Security purposes, they did

not meet the severity required by the Listing of Impairments (Appendix 1 to Subpt. P 20 C.F.R. Part 404) to establish disability based on medical factors alone. This decision was based principally on the lack of medical evidence supporting the claim that Martinez had failed or would fail to return to full weight-bearing status for at least one year after reconstructive surgery. (R. at 20.)

The ALJ also found that there were no nonexertional limitations present. (R. at 23, ALJ Finding No. 4.) The ALJ arrived at this conclusion because she found that Martinez' allegations of pain, functional limitations, and total disability were not fully credible. (R. at 21 and 23, ALJ Finding No. 3.) Despite the medically mandated environmental restrictions, (R. at 89), the medical evidence, according to the ALJ's interpretation, did not support the allegation that Martinez was unable to perform sedentary work for a period of at least twelve continuous months. (R. at 21). Because the ALJ found a lack of nonexertional limitations, she employed the Occupational Grids as the basis of her decision without taking other factors into consideration. (R. at 24, ALJ Findings 8 and 9.)

The ALJ relied upon the grids to support her conclusion that, taking Martinez' residual functional capacity, age, education, and work experience into consideration, she was not disabled (R. at 24, ALJ Finding No. 8), and had not been under a disability as defined by the Act at any time through the date of the decision. (R. at 24, ALJ Finding No. 9, citing 20 C.F.R. § 416.920(f)).

## II. STANDARD OF REVIEW

■ Review of the agency's final decision is limited to determining (1) whether the correct legal standard was applied and (2) whether the record considered as a whole sets forth substantial evidence to support the Secretary's final decision. *Stewart v. Chater*, 993 F.Supp. 809, 813 (D.Colo.1998). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias v. Secretary of Health and Human Servs.*, 933 F.2d 799, 800 (10th Cir.1991).

■ Proper review to determine whether there is substantial evidence requires a me-

ticulous examination of the record in its entirety. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir.1988). However, if there is a question of whether the proper legal standards were invoked to arrive at a decision, remand is appropriate. *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir.1988).

## III. MERITS OF THE APPEAL

The Commissioner requires a five-step review within the requirements of 20 C.F.R. § 416.920 to determine whether the claimant is disabled under the Act. The claimant bears the burden of proof in the first four steps. "Once the Commissioner has determined at step four that the claimant cannot perform his past relevant work, the claimant has established a prima facie case of disability." *Stewart*, 993 F.Supp. at 814. At step five, the burden then shifts to the Commissioner to show that given the claimant's residual functional capacity, age, education and work experience, the claimant can perform a significant number of jobs that exist in the national economy. *Id.*

Here, the ALJ reached step five. (R. at 22.) Therefore, the Commissioner bears the burden to prove that, despite the limitations imposed by the claimant's severe impairments, there are a significant number of jobs in the national economy that she can perform. (R. at 22.) The ALJ determined that, based on the grids, "administrative notice is taken that there are significant numbers of jobs in the national economy which the claimant is able to perform." (R. at 23.)

In order to determine whether there is substantial evidence to support the ALJ's decision, it is necessary to look the propriety of the ALJ's reliance upon the grids, and whether there was substantial evidence in the record to support the ALJ's finding that the claimant can perform a full range of sedentary work.

### A. Reliance on the grids

■ The purpose of the grids presented in 20 C.F.R. 404 Subpt. P, App. 2, Table No. 1 is to "set forth presumptions regarding whether jobs exist in significant numbers in the national economy given the particular limitations possessed by the claimant."

*Trimiar v. Sullivan,* 966 F.2d 1326, 1332 (10th Cir.1992). The ALJ relied exclusively upon the grids in reaching her decision that Martinez was not disabled. (R. at 24, ALJ Finding No. 8.) There are two instances where it is legally appropriate to rely absolutely upon the grids. First, where the claimant's characteristics precisely match the criteria of the grid implemented; and second, where there are no significant nonexertional impairments present that reduce the potential occupational base of the grids. *Trimiar,* 966 F.2d at 1332.

In her reliance on the grids, the ALJ asserted that Martinez' complaints were neither fully credible nor supported by the record as a whole, and that there were no nonexertional limitations present. (R. at 23, ALJ Findings 3 and 4.) To determine whether the ALJ properly relied upon the grids, it is necessary to (1) examine the credibility of the claimant's complaints, and (2) determine whether there are any nonexertional limitations present.

### (1) *Credibility of complaints*

 The record supports the ALJ's determination regarding Martinez' credibility. The ALJ found her subjective allegations lacked credibility. Credibility findings aid in the determination of what should be taken into consideration in disability cases. In *Luna v. Bowen,* the Tenth Circuit determined that three questions must be answered to determine whether both the subjective and objective evidence of the claimant's disabling pain must be taken into consideration in a disability assessment. *Luna v. Bowen,* 834 F.2d 161 (10th Cir.1987). First, does the claimant establish a pain producing impairment by objective medical evidence? Second, if so, is there a "loose nexus" between the proven impairment and the claimant's subjective allegations? Finally, upon consideration of both objective and subjective evidence, is the claimant's pain disabling? *Id.* 834 F.2d at 163–164. Accordingly, if the claimant's allegations are supported by a loose nexus with objective medical assessment, then these allegations are considered credible and they must be taken into consideration in the determination of disability. The ALJ found that Martinez'

complaints lacked credibility and therefore she eliminated the consideration of her subjective complaints in the determination of disability, and relied upon the grids.

 Upon review, one should "generally treat credibility determinations made by the ALJ as binding." *Talley v. Sullivan,* 908 F.2d 585, 587 (10th Cir.1990). An ALJ's credibility assessment is usually appropriate if it is well supported by clinical and laboratory diagnostic techniques, and consistent with the evidence in the record as a whole. *Burns v. Apfel,* No. 97–2323, 145 F.3d 1345, 1998 WL 278535, at *4 (10th Cir.1998).

The ALJ properly applied this analysis, consulting the rule set forth in *Kunges v. Sullivan,* 771 F.Supp. 1114, 1117 (D.Colo. 1991), requiring medical and nonmedical testimony to be consistent as to the severity of the pain. On September 27, 1993, after Martinez had her hips replaced and arthroscopic surgery on her left knee, her physician recommended that she should engage in sedentary work. (R. at 111.) Additionally, on March 21, 1995, the attending physician stated that Martinez would be unable to work for three to four months after her knee replacement surgery, but she "will probably always qualify for sedentary job[s] with mild ambulation." (R. at 21 and 127.) This medical evidence is inconsistent with Martinez' claim of a disability which has prevented or will prevent her from performing sedentary work for at least one continuous year. This inconsistency supports the ALJ's finding that the "claimant's allegations are neither fully credible nor supported by the record as a whole." (R. at 23, ALJ Finding No. 3.) There is no basis in the record to disturb the ALJ's credibility determination and I decline to do so.

### (2) *Nonexertional limitations.*

 The existing record is insufficient to support the ALJ's conclusions regarding Martinez' nonexertional limitations. The presence of nonexertional limitations requires the use of the grids as a framework for considering how much the individual's work capacity is diminished in terms of jobs that will be eliminated due to such limitations. *Thompson v. Sullivan,* 987 F.2d 1482,

1492 (10th Cir.1993). The ALJ found that there were no nonexertional limitations. (R. at 23, ALJ Finding No. 4.) Nonexertional, unlike exertional, limitations exist when there is pain present regardless of whether the claimant is exerting herself in activities related to strength requirements in the grid ranges. *Huston,* 838 F.2d, at 1131. However, the mere presence of some nonexertional pain does not automatically preclude reliance upon the grids, "disability requires more than the mere inability to work without pain." *Ray v. Bowen,* 865 F.2d 222, 225 (10th Cir.1989). In order to determine that the ALJ's reliance on the grids was incorrect, it is necessary to find that nonexertional limitations were present and that they were adequately significant to reduce the potential occupational base available under the grids.

■ Martinez claims to have nonexertional limitations including fatigue due to pain, loss of concentration abilities, irritability due to pain and daily crying due to pain. (Pl.'s Opening Br. at 8.) The ALJ effectively dismissed these claims through her unfavorable assessment of the claimant's credibility. (R. at 22.) Regardless of the validity of the ALJ's credibility determination, the Tenth Circuit has determined that when a claimant is subject to environmental restrictions there is a nonexertional impairment to be considered. *Talbot v. Heckler,* 814 F.2d 1456, 1464 (10th Cir.1987). Therefore, environmental limitations will qualify as nonexertional limitations if they are sufficiently severe to diminish the number of jobs available to the claimant; notwithstanding a finding that the claimant's pain allegations are not fully credible. Martinez is subject to environmental limitations regarding concentrated exposure to extreme cold, wetness and vibration; in addition to limitations on any exposure to hazards including machinery and heights. (R. at 89.) If her environmental limitations are proven to decrease significantly the number of jobs available to Martinez, they will qualify as nonexertional limitations, and require analysis beyond the strict application of the grids. However, the ALJ did not conduct an analysis to determine whether these environmental limitations significantly decrease the number of jobs available to Martinez, and thus qualify as nonexertional limitations precluding exclusive reliance on the grids. The record is insufficient to support the ALJ's exclusive reliance on the grids to reach a conclusion regarding the availability of jobs in the national economy.

B. *Substantial evidence supporting the finding that the claimant can perform a full range of sedentary work*

■ Martinez' second allegation on appeal is that the record does not set forth substantial evidence to support the ALJ's finding that she can perform a full range of sedentary work. (Pl.'s Reply Br. at 1). I agree.

Step five of the Social Security disability analysis shifts the burden of proof to the Commissioner. Thus the ALJ is required to assess whether the Commissioner presented substantial evidence to support the finding that the claimant can perform a full range of sedentary work. If the Commissioner failed to consider physical impairments and alleged pain in determining whether the claimant can perform a full range of sedentary work and qualify for most jobs in the relevant residual functional capacity category, then expert vocational testimony, or other similar testimony must be presented to satisfy the burden of step five. *Ragland v. Shalala,* 992 F.2d 1056, 1058 (10th Cir.1993). No such testimony was requested or offered at the administrative hearing.

As set forth above, the ALJ chose to rely on the grids rather than taking the claimant's nonexertional environmental limitations and alleged pain into consideration in determining her ability to perform a full range of sedentary work. The ALJ arrived at her conclusion without consulting a vocational expert. The testimony of a vocational expert is necessary for the proper disposition of this case.

*Talbot v. Heckler* is instructive. Just as Talbot was, so Martinez is subject to environmental restrictions. In both cases, the ALJ decided against the claimant without considering environmental restrictions, and without justifying treatment of the environmental restrictions as negligible nonexertional limitations. *Talbot,* 814 F.2d at 1464–1465. In *Talbot,* the court decided that "arguably, only vocational testimony could have provided suf-

ficient data as to whether substantially all of the jobs in the ... work category could accommodate the claimant's environmental restrictions." *Talbot*, 814 F.2d at 1464–1465.

Testimony of a vocational expert familiar with Martinez' limitations is the only way that the existence of significant nonexertional limitations and substantial evidence supporting the claimant's ability to perform a full range of sedentary work can be established. The failure to elicit such testimony leaves a question of whether the proper legal standards were invoked and thus compels a remand.

### IV. CONCLUSION

The ALJ's determination is remanded for further development of the record in accordance with this opinion. The ALJ should consult a vocational expert to determine whether Martinez' environmental restrictions constitute nonexertional limitations adequate to limit her ability to perform a full range of jobs requiring sedentary work. If the range of available jobs is sufficiently limited, then the ALJ must give full consideration to all relevant facts, rather than rely solely on the grids to make the decision.