F I L E D
United States Court of Appeals
Tenth Circuit

JUN 9 2000

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JAMES G. ARMER,

Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

Defendant-Appellee.

No. 99-7128
(D.C. No. 98-CV-424-S)
(E.D. Okla.)

**ORDER AND JUDGMENT** *

Before **KELLY** , **McKAY** , and **HENRY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore

ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff James G. Armer appeals from the denial of his claim for social security disability benefits. We have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g). We review the agency's decision on the whole record to determine only whether the factual findings are supported by substantial evidence and the correct legal standards were applied. See Goatcher v. United States Dep't of Health & Human Servs., 52 F.3d 288, 289 (10th Cir. 1995). We may not reweigh the evidence or substitute our judgment for that of the agency. See Kelley v. Chater, 62 F.3d 335, 337 (10th Cir. 1995).

Claimant was born in 1952. He is married and has two children, one of whom still lives at home. He has an eighth-grade education and limited math and reading skills. Appellant's App., Vol. II at 177-78. He has never written a check and does not pay his family's bills or balance the checkbook. See id. at 193-94. He last worked at Baldour Electric from 1979-84 as a janitor and as a motor assembler. Before that, he worked at several other companies. He has had double bypass heart surgery, carpal tunnel surgery on both arms, and surgery on his right shoulder. He also has documented back problems. He filed his claim for benefits on September 1, 1995, alleging a disability beginning on December 19, 1994, due to headaches and severe pain in his neck, shoulders, back, hands, right leg, and upper torso resulting from the series of injuries and surgeries to his neck, back, shoulder, hands, and heart. He alleged that he cannot sit up straight, see id.

at 182, 187, 201, cannot stand for more than ten or fifteen minutes, *see id.* at 192, 201, and cannot hold his arms up for any length of time, *see id.* at 184-85, 201. His right foot was once run over by a forklift and he walks with a limp, *see id.* at 188, although he tries to walk for fifteen to twenty minutes per day, *see id.* at 190. Because of cramps in his hands, as well as his limited education, it is hard for him to write. *See id.* at 178, 184. He also has some tingling in his right hand. *See id.* at 192. He no longer goes fishing or hunting or visiting with friends away from his home. *See id.* at 190-91. He goes to church and to the store, but does little else besides helping his wife with the dishes, watching television from his recliner, and reading his Bible. *See id.* at 177, 185, 187, 191, 192, 203. He said that he cannot afford doctor visits or prescription medications because he did not receive worker's compensation benefits, does not have medical insurance of his own, and his wife's insurance does not cover the cost of medication or enough of the cost of doctor visits. *See id.* at 179-80, 181, 193, 196.

The administrative law judge (ALJ) issued his decision on March 26, 1997. He found at step four that claimant did not retain the residual functional capacity (RFC) to return to any of his past jobs, which were unskilled and required light or medium exertion. The ALJ decided, however, that claimant retained the RFC for unskilled sedentary work that did not require more than occasional bending,

-3-

stooping, crouching, or climbing, and that would allow him to change positions from time to time. See id. at 20. The ALJ did not make a specific finding about claimant's asserted manipulative impairments, but made a general finding that claimant had residuals from carpal tunnel syndrome without specifying what these residuals were. See id. (finding 3). The ALJ made no specific finding about claimant's ability to sit, stand, or walk, but stated that "claimant would need to change positions from time to time to relieve his symptomatology." Id. (finding 7). At step five, the ALJ used Rule 201.24 of the medical-vocational guidelines as a framework for a decision that claimant was not disabled. See 20 C.F.R. pt. 404, subpt. P, app. 2. He posed some hypothetical questions to a vocational expert (VE). The VE testified that there were jobs that claimant could perform under all but one of the scenarios, and gave clerical mailer and product assembly as two examples. When asked whether claimant could work with all of the impairments he alleged to be true, however, the VE answered that he could not. The ALJ concluded that claimant was not disabled.

Claimant argues on appeal, first, that the ALJ's finding that he retained the RFC for limited sedentary work is not supported by substantial evidence because the ALJ: (a) disregarded the only treating physician's opinion in the record; (b) failed to obtain the consultative examiner's opinion regarding claimant's RFC as required by the regulations; (c) failed to follow the regulations for RFC as

further explained in Social Security Ruling 96-9p; and (d) relied on the absence of evidence contrary to Thompson v. Sullivan, 987 F.2d 1482 (10th Cir. 1993). He also argues, second, that the ALJ's finding that he could perform a significant number of sedentary jobs is not supported by substantial evidence because: (a) his manipulative impairment was not included in the hypothetical questions to the VE; and (b) the jobs the VE identified require repetitive use of the hands according to the Dictionary of Occupational Titles.

RFC is a "function-by-function assessment," Social Security Ruling 96-9p, 1996 WL 374185, at *2, which includes claimant's ability to sit, stand, and walk, and his manipulative and postural functions, see 20 C.F.R. § 404.1545(b). The agency acknowledges that "[m]ost unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity." Social Security Ruling 96-9p, 1996 WL 374185, at *8. Thus, claimant's asserted manipulative impairments matter greatly to his claim. Moreover, "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing" because "[t]he extent of the erosion [of the occupational base] will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand." Id. at *7. The ALJ's findings also must be specific because the hypothetical questions

submitted to the VE must state the claimant's impairments "with precision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) (quotation omitted).

The ALJ noted in the body of his decision that a consultative examination performed in November 1995 showed that claimant had good dexterity in his hands. See Appellant's App., Vol. II at 17, 161. However, claimant correctly points out that the examiner's report does not include an RFC assessment, even though the regulation calls for such findings in a complete consultative examination. See 20 C.F.R. 404.1519n(c)(6). The agency must bear the responsibility to ensure that a consultative examination conforms to the regulations. In any case, we cannot conclude that the ALJ accepted the consultative examiner's evidence as true because he found that claimant had unspecified residuals from carpal tunnel syndrome, not good dexterity in his hands. See Appellant's App., Vol. II at 20 (finding 3). The ALJ's finding that claimant would have to change positions from time to time to relieve his symptomatology is equally vague. See id. at 20 (finding 7). The ALJ erred by failing to make specific findings assessing the extent of claimant's manipulative impairments and claimant's ability to sit, stand, and walk.

To the extent the ALJ made a finding about claimant's RFC, he relied on the 1995 opinions of Drs. Greenlaw and Parker at the Parker Orthopaedic and Spine Institute, where claimant sought treatment at least from 1993-96. See id.

at 15, 151-59, 170. On May 31, 1995, Dr. Parker noted on a progress sheet that claimant had "marked degenerative changes in the spine," a five percent permanent impairment to the back and therefore to the body as a whole, and "should refrain from heavy lifting, pushing, pulling, repetitive bending or isolated lifts over 10 pounds." [1] Id. at 152. On September 22, 1995, Dr. Greenlaw noted on a progress sheet that, in light of Dr. Parker's opinion and claimant's magnetic resonance imaging (MRI) examinations, claimant was capable only of "very sedentary and light type of work not requiring any activities that would aggravate his present problem with his cervical or lumbar spine." Id. at 151.

Claimant points out that on May 29 and July 25, 1996, Dr. Thompson issued statements that claimant could not sit "for any length of time," id. at 170, and was disabled on account of his back problems, see id. at 171. He argues that the ALJ should have accepted Dr. Thompson's opinion. The ALJ rejected Dr. Thompson's opinion on the grounds that: (1) it was conclusory and unsupported by diagnostic testing, laboratory reports, or clinical findings; (2) it appeared to have been prepared for the purpose of obtaining financial assistance from the Cherokee Nation; and (3) it conflicted with other medical evidence related to this claim for social security benefits. See id. at 18, 170-71.

---

[1] Claimant testified that Dr. Parker took him off work and said it would be permanent. See Appellant's App., Vol. II at 180-81, 193. We find no support for this claim in the medical evidence.

Although claimant's assertion that Dr. Thompson was his only treating physician is without merit, the ALJ's stated reasons for rejecting Dr. Thompson's opinion are belied by the record. Contrary to the ALJ's view, we do not consider Dr. Thompson's opinion to be conclusory, unsupported, or in conflict with other medical evidence. Rather, it is clear from the progress sheets, as well as from the additional explanation provided by claimant and his counsel at the hearing, that Dr. Thompson was one of claimant's treating physicians at the Parker Institute. [2] It is also clear that Dr. Thompson based his opinion on claimant's previous records, as he stated on July 25, 1996, that "[t]he patient is unchanged from his prior exam." Id. at 170. The prior exam in the record is Dr. Greenlaw's September 22, 1995 exam, which was expressly based on MRI examinations from 1993 and 1994. See id. at 151. It is not necessary for each and every doctor to support his or her opinion with new medical tests.

Dr. Greenlaw's conclusion in September 1995 was that "[t]he only type of work that this patient could do would be a very sedentary and light type of work." Id. Dr. Thompson's conclusion the next year was that claimant was "still unable to sit for any length of time because of progressive pain in the neck and low

[2] At the hearing, claimant and his counsel informed the ALJ that Dr. Parker originally owned the practice, that Dr. Greenlaw succeeded Dr. Parker for a short time after his death, and that Dr. Thompson then succeeded Dr. Greenlaw. See Appellant's App., Vol. II at 181-82.

back," id. at 170, and was disabled due to "[c]entral disc protrusion at C6-7 levels, [and] degenerative disc changes at T11-12, L4-5, and L5-S1 levels," id. at 171. Dr. Thompson's statements do not conflict with Dr. Greenlaw's opinion; rather, they demonstrate the progressive nature of claimant's back problems. Claimant testified that his pain had gotten worse over time. See id. at 196-97.

The government points to RFC assessments made in 1995 and 1996 by agency physicians as substantial evidence to support the ALJ's conclusion that claimant can sit long enough to do sedentary work. See id. at 80-87. As we have noted in the past, these assessments typically "consist[] solely of boxes checked on the [agency's] forms to indicate [the assessors'] conclusion[s]." Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987). For that reason, we have rejected this type of conclusory assessment of a claimant's capabilities, holding that "[s]uch evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence." Id. The two agency assessments in this case indicate, with a checkmark but without explanation, that claimant can sit for about six hours out of an eight-hour workday. See Appellant's App., Vol. II at 81, 89. We hold that they do not constitute substantial evidence to support the ALJ's decision, and conclude that the ALJ erred by rejecting Dr. Thompson's opinion that claimant has essentially

no capacity to sit. For all of the above reasons, the agency's denial of benefits must be reversed. It is unnecessary to discuss claimant's remaining arguments.

"When a decision of the [Commissioner] is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits." Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993). "Outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose." Sorenson v. Bowen, 888 F.2d 706, 713 (10th Cir. 1989) (quotation omitted). The primary activity of sedentary work is sitting. See 20 C.F.R. § 404.1567(a). "[S]itting should generally total approximately 6 hours of an 8-hour workday." Social Security Ruling 83-10, 1983 WL 31251, at *5. Because Dr. Thompson's opinion mandates a finding that claimant has essentially no capacity for sitting, the ALJ would be unable to sustain his step-five burden of identifying sedentary jobs that claimant can perform if the case were remanded. See Thompson, 987 F.2d at 1487. We therefore find no reason for additional administrative proceedings in this case, now nearly five years old, and instead exercise our discretion to remand for an immediate award of benefits.

The judgment of the United States District Court for the Eastern District of Oklahoma is REVERSED, and the case is REMANDED with directions to

remand, in turn, to the Social Security Administration for an immediate award of benefits.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge
