**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 3 2001**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

BARBARA A. HINTON,

      Plaintiff-Appellant,

v.

LARRY G. MASSANARI,* Acting
Commissioner of the Social Security
Administration,

      Defendant-Appellee.

No. 00-3408
(D.C. No. 98-CV-2185)
(D. Kan.)

---

ORDER AND JUDGMENT **

---

Before **EBEL**, **PORFILIO,** and **KELLY**, Circuit Judges.

---

      After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

    \*      On March 29, 2001, Larry G. Massanari became the Acting Commissioner
of Social Security. In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Massanari is substituted for William A. Halter as the
appellee in this action.

    \*\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Plaintiff Barbara A. Hinton appeals from an order of the district court affirming the Commissioner's determination that she is not entitled to Social Security disability benefits.  We reverse and remand for further proceedings.

We review the Commissioner's decision to determine whether his factual findings were supported by substantial evidence in light of the entire record and to determine whether he applied the correct legal standards.  See Castellano v. Sec'y of Health & Human Servs., 26 F.3d 1027, 1028 (10th Cir. 1994).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (quotations omitted).  In the course of our review, we may "neither reweigh the evidence nor substitute our judgment for that of the agency."  Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).

Ms. Hinton alleged disability as of March 1995  due to degenerative disc disease.  The administrative law judge (ALJ) determined that she was not disabled at step five of the five-step sequential process, see Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988), as she could perform sedentary work with a sit/stand requirement.

On appeal, Ms. Hinton argues that the ALJ's findings are not based on substantial evidence and he applied the wrong law. She also contends that the ALJ erroneously failed to give substantial weight to the opinion of her treating physician. She maintains she did follow her physicians' prescribed treatment and when she did not, she presented a legally-sufficient reason for not complying. Finally, Ms. Hinton argues her testimony was credible and she cannot work.

Ms. Hinton was born in 1957 and is married with four minor children. She has five years of college and two years of vocational training as a physical therapist. She worked as a physical therapist for approximately fifteen years before she injured her lower back while assisting a patient. She has not worked since March 24, 1995.

The ALJ determined that Ms. Hinton was not disabled because she had never been hospitalized and had undergone no surgical procedures and her testimony regarding her level of pain was not credible because she performed more daily activities than he thought she could were her pain as severe as she alleged. The ALJ also found that "the monies she has received and might receive with respect to the Workers' Compensation claim may possibly have given claimant less motivation to return to the work force." App., Vol. 1 at 14. [1] The

_____

[1] This statement was improper and undercuts the objectivity of the ALJ's opinion. Congress drafted the social security statutes with the expectation that

(continued...)

ALJ determined that Ms. Hinton had not followed her doctors' recommended treatment in that she had failed to complete a work hardening program after being told that the program would be modified for her and she had decided not to undergo a spinal fusion. He concluded that her treating physician's opinion that she was totally disabled was not supported by the medical evidence.

We cannot agree that substantial evidence supports the ALJ's conclusion. Further, we hold that the ALJ did not apply the correct legal standards in making his determination.

> In reviewing the impact of a claimant's failure to undertake treatment on a determination of disability, we consider four elements: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse.

Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987); see also 20 C.F.R. § 404.1530.

---

[1](...continued)
claimants could receive both workers' compensation and disability benefits for on-the-job injuries. See 42 U.S.C. § 424a; Richardson v. Belcher, 404 U.S. 78, 82-83 (1971). Thus, Ms. Hinton's receipt of such benefits has no bearing on her credibility. Cf. Eichel v. N.Y. Cent. R.R., 375 U.S. 253, 255 (1963) ("it would violate the spirit of the federal statutes if the receipt of disability benefits under the Railroad Retirement Act . . . were considered as evidence of malingering by an employee asserting a claim under the Federal Employers' Liability Act").

The ALJ identified two instances in which he stated that Ms. Hinton had not followed recommended treatment. He noted that Ms. Hinton had not completed a work hardening program. Ms. Hinton reported that the program increased her pain severely. Dr. Hood noted that he had stopped her course of treatment because she was getting worse. App., Vol. I at 130. In fact, Dr. Hood observed that he did "not have any suggestions that she has not already done." Id. at 133. He pointed out that Ms. Hinton was taking pain medications, exercising, resting, and using heat and ice. He concluded that "we are pretty much stuck with things as they are." Id. Ms. Hinton did receive recommended epidural steroid injections, but the benefits were short-lived and she "slid[] downhill" thereafter. Id.

The ALJ also noted that Ms. Hinton had refused to undergo a spinal fusion. No physician [2] opined that surgery would have restored Ms. Hinton's ability to work. In fact, the physicians stated either that they did not recommend surgery or that satisfactory results were uncertain. See App., Vol. I at 126 (Dr. Hood: "There is nothing surgical about this."); 133 (Dr. Hood: "She is not a candidate for conventional surgery . . . ."); 159 (Dr. MacMillan: "In view of the limited potential of success in treating back pain with effusion, Ms. Hinton is justifiably

[2] Ms. Hinton has three treating physicians. Dr. Hopkins is her personal physician. Drs. MacMillan and Hood are her employer's workers' compensation physicians.

apprehensive about pursuing surgical treatment."); 178 (Dr. Hopkins: surgery is "an acceptable suggestion[, but] is more of a patient decision than a physician decision."). Only Dr. Striebinger, a consulting physician, who felt that "her best chance of long term success would be with a fusion," expressed no reservations as to the desirability of surgery. See id. at 173.

The opinions of Ms. Hinton's treating physicians supply ample justification for her decision not to have the surgery during the time this case was pending before the ALJ. Cf. Soc. Sec. Reg. 82-59, 1982 WL 31384 at *4 [1975-1982 Rulings] Soc. Sec. Rep. Serv. (West) 793, 794 (1983) (individual's failure to follow prescribed treatment is justified and will not preclude finding of disability if two treating physicians take opposing views regarding treatment, one recommending and one advising against the same treatment). Here, none of Ms. Hinton's treating physicians unequivocally recommended the surgery.

Over a year after the hearing before the ALJ, Dr. Bernhardt recommended that Ms. Hinton undergo a new surgical procedure which would be more likely to produce successful results than prior methods. See App. at 210-211. Apparently, Ms. Hinton decided to have the surgery and it was performed November 1, 1997,

approximately four months after Dr. Bernhardt proffered his opinion.  See id., at 209.[3]

The ALJ also discredited Ms. Hinton's reports of pain.  He noted that she had denied any back discomfort at the Surgicenter of Johnson County.  He failed to mention, however, that this statement was part of the recovery room notes after she had an epidural steroid injection and referred only to the surgical procedure, not to her general physical condition.  See id. at 120.

The ALJ also noted that Dr. MacMillan had discharged her from his care, implying that she was released to return to work.  Dr. MacMillan was Ms. Hinton's Workers' Compensation physician.  He discharged her because she had reached maximum medical improvement after having chosen not to have surgery.  See id. at 181.  However, he still considered her to be totally disabled from work.  See id. at 191.

No physician has questioned the veracity of Ms. Hinton's descriptions of her pain.  All have concluded that she was totally disabled from working.  See id. at 189 (Dr. MacMillan: Patient is temporarily totally disabled since March 31, 1995); 175 (Dr. Hopkins: Currently she cannot work; uncertain whether she ever

---

[3]     This information, arising after the date of the ALJ's decision, was presented only to the Appeals Council.  The Appeals Council did not mention it in its decision.  The ALJ should consider it on remand.

will be able to return to employment); 195 (Dr. Hopkins: "At the moment, I would consider her to be totally disabled for work activities.").

Thus, the record supports Ms. Hinton's report of disabling pain. Her daily activities are not inconsistent with this report. She testified that she reads and does light house work such as dusting and some picking up. She does prepare meals. She will go grocery shopping, but either her husband or a child must complete the shopping as she must rest part way through. She does not mop, sweep, vacuum, or garden. She walks seven-tenths of a mile a day to a park where she lays down on a slide before she can return home. She will attend her children's school activities. She occasionally goes to the movies or out to dinner and church on Sunday. She needs to lay down for half an hour every morning due to muscle spasms. In the afternoon, she watches her kids and plays games with them while laying down

The ALJ rejected Dr. Hopkins' opinions regarding Ms. Hinton's functional capabilities finding them to be inconsistent. In January, 1996, Dr. Hopkins stated that Ms. Hinton could stand, walk, or sit for only one-half hour at a time. She could stand for a total of three hours a day, walk for a total of two hours a day and sit for a total of three hours a day. In September, 1996, Dr. Hopkins stated that she could stand for one hour at a time for a total of two hours per day. He also stated that she could walk and sit for one-half hour at a time for a total of

two hours per day for each activity. These inconsistencies are not so extreme as to warrant discrediting Dr. Hopkins' opinion.

The Commissioner also notes that Dr. Hopkins' opinion is inconsistent with that of The Back Center, where she was referred for an evaluation. The Back Center report stated that Ms. Hinton's goal was to return to her prior work of physical therapy on a medium level of work with lifting and ability to assume various body positions repetitively. The Center projected that she would be able to lift up to twenty-two pounds frequently and eleven constantly. The report did not state that she had performed that amount of lifting during testing. The Center did project that she would be able to return to the work she desired, but at no point, did The Center report that she was currently able to work.    See id. at 102.

The ALJ discredited Ms. Hinton's testimony that she had to lay down every few hours during the day. He noted that no doctor had placed that restriction on her activities. In response to her attorney's question as to whether he could ask Dr. Hopkins about her need to lay down, the ALJ stated:

> [I]t's strange that the medical files that I've seen never make any comment about [the need to lie down during the day] until a lawyer writes them in a letter on behalf of their client. Then they always say they have to lie down. . . . I'm telling you up front though, he better give me a good reason. . . . since he hasn't said it in a year and a half or any other doctors said it in a year and a half, he'd better give me findings to support his reasoning and I will look at it, let's say with great care. . . . [I]f the doctor chooses to say, "Oh, yeah. She's needed to lie down for a year and a half," he's going to have to tell

my why and I may accept it. I probably won't, but I might since he's never . . . said it before.

Id. at 256-57. Thus, the ALJ clearly presented his intent to reject Ms. Hinton's testimony and Dr. Hopkins' later opinion confirming her testimony because the opinion was obtained for the purpose of supporting Ms. Hinton's testimony. In his opinion, the ALJ stated that Ms. Hinton's testimony that she needed to lie down was

> "a very common allegation in testimony in disability cases. In most claims, the allegation rests solely on claimant's testimony . . . . The undersigned finds that in the cases that he has dealt with in which this allegation has been raised, a physician or other professional source has never directly observed the frequency with which a claimant actually lies down, and has rarely even estimated how frequently such a need might arise based on objective medical findings.

Id. at 15.

The fact that no physician has observed a claimant throughout the day to verify the claimant's reported activity and rest periods cannot be used to discredit a claimant's report. Rarely, if at ever, will a physician track a patient throughout a day to verify the patient's report. Further, the fact that the physician does not note that his patient reports lying down frequently is not indicative of the patient's later veracity at a hearing. A patient generally will report pain levels and activities that increase that pain. The physician will report objective medical findings identifying the source of the pain. His failure to report the patient's

-10-

activities of daily living cannot be held against the patient if objective medical findings support the patient's testimony.

The ALJ discredited Dr. Hopkins's later submitted report which provided additional information the ALJ sought at the hearing and which supported Ms. Hinton's testimony, stating that it was "not supported by the totality of the medical record." Id. at 18. "[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998); see also Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000) (when rejecting treating physician's opinion, ALJ may not make "speculative inferences from medical reports" and may not reject it outright based on "his or her own credibility judgments, speculation or lay opinion" (quotations omitted)) ; Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995) (purpose for which medical report is obtained is not legitimate basis for rejecting it as report procured by claimant is entitled to no less weight than report procured by Commissioner: "The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits." (quotation omitted)).

An ALJ may certainly question a doctor's credibility when the opinion, as here, was solicited by counsel. See, e.g., Saelee v. Chater, 94 F.3d 520, 522-23 (9th Cir. 1996) (ALJ justified in finding treating physician's "report

untrustworthy because it was obtained solely for the purposes of the administrative hearing, varied from [physician]'s own treatment notes, and was worded ambiguously in an apparent attempt to assist [plaintiff] in obtaining social security benefits"). The ALJ may not automatically reject the opinion for that reason alone, however. The ALJ here clearly indicated prior to receipt of the opinion that he was going to reject it. This is not permissible. We note that at no time has any physician questioned Ms. Hinton's reports of the level of pain she experiences. There have been no allegations of malingering, nor has she been thought to have given less than her best efforts in any testing.

In conclusion, we hold that the ALJ's opinion is not supported by substantial evidence in the record. In light of the record and the applicable law, Ms. Hinton clearly suffered from a degenerative disc disease that was totally disabling. We must reverse the ALJ's decision.

"When a decision of the [Commissioner] is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits." Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993). "Outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose." Sorenson v. Bowen, 888 F.2d 706, 713 (10th Cir. 1989) (quotation omitted). The record supports a finding of disability. This case is therefore in a posture to be

remanded for an immediate award of benefits for at, a minimum, a closed period of time from March 1995 to the date Ms. Hinton recovered from her surgery. Further development of the record is necessary to determine improvement since that date. If Ms. Hinton recovered sufficiently from the surgery to perform substantial gainful activity, benefits should be terminated as of that date. The judgment of the United States District Court for the District of Kansas is REVERSED, and the case is REMANDED with directions to remand, in turn, to the Commissioner for further proceedings consistent with this order and judgment. We further direct that this case be assigned to a different ALJ on remand.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge