**Michael T. McAFEE, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. 03–4124–JAR.**

United States District Court, D. Kansas.

July 7, 2004.

Scott L. Johnson, Tilton & Tilton, CHTD, Topeka, KS, for Plaintiff.

David D. Plinsky, Office of United States Attorney, Topeka, KS, for Defendant.

## MEMORANDUM & ORDER

ROBINSON, District Judge.

Plaintiff Michael T. McAfee brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of Defendant Commissioner of Social Security's denial of his application for a period of disability and disability insurance benefits under Title II of the Social Security Act. According to plaintiff, defendant erroneously determined that some of his impairments were not severe, failed to adequately support his decision that plaintiff's impairments did not meet or equal a Listed Impairment, failed to properly assess plaintiff's credibility, and therefore erroneously determined plaintiff's residual functional capacity and resulting ability to work. As explained in more detail below, the Court concludes that the decision, in part, is not based on substantial evidence and/or on an incorrect application of the law, and therefore the Court reverses and remands this case.

## I. Procedural Background

On June 21, 2000, plaintiff filed his application for a period of disability and disability insurance benefits. Plaintiff is insured for disability benefits through March 31, 2001, so he must establish disability on or prior to that date in order to be entitled to Title II benefits. On plaintiff's application he claimed disability since February 20, 1999, due to: arthritis in his knees, hands and back; a bulging disc in his lower back; nerve problems in his arms due to neck impairment; and sleep apnea. The application was denied both initially and upon reconsideration. At plaintiff's request, an administrative law judge (ALJ) held a hearing on June 24, 2002, at which both plaintiff and his counsel were present. On September 26, 2002, the ALJ rendered a decision denying all benefits, on the basis that plaintiff was not under a "disability" as defined by the Social Security Act. After the ALJ's unfavorable decision, plaintiff requested review by the Appeals Council; his request for review was denied on May 7, 2003. Thus, the ALJ's decision is the final decision of defendant.

## II. Standard of Review

■ Judicial review under 42 U.S.C. § 405(g) is limited to whether defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the correct legal standards.[1] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2]

---

1. See White v. Massanari, 271 F.3d 1256, 1257 (10th Cir.2001) (citing Castellano v. Sec'y of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir.1994)).

2. Id. (quoting Castellano, 26 F.3d at 1028).

In the course of its review, the court may not reweigh the evidence or substitute its judgment for that of defendant.[3]

## III. Relevant Framework for Analyzing Claim of Disability and the ALJ's Findings

"Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ...."[4] The Social Security Act further provides that an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...."[5]

The Social Security Administration has established a five-step sequential evaluation process for determining whether a claimant is disabled,[6] and the ALJ in this case followed the five-step process. If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.[7] Step one determines whether the claimant is presently engaged in substantial gainful activity.[8] If he is, disability benefits are denied.[9] If he is not, the decision maker must proceed to the second step.[10] Here, the ALJ determined that plaintiff was not engaged in substantial gainful activity and, thus, properly proceeded to the second step.

The second step of the evaluation process involves a determination of whether "the claimant has a medically severe impairment or combination of impairments."[11] This determination is governed by certain "severity regulations," is based on medical factors alone, and consequently, does not include consideration of such vocational factors as age, education, and work experience.[12] Pursuant to the severity regulations, the claimant must make a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities.[13] If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits.[14] If, on the other hand, the claimant presents medical evidence and makes the de minimis showing of medical severity, the decision maker proceeds to step three.[15] The ALJ in this case concluded that plaintiff satisfied the severity requirement based on the following impairments: status post (1999) C5–6 discectomy and fusion, cervical and

**3.** *Id.*

**4.** *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir.1988) (quoting 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (1982)).

**5.** *Id.* (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (1982 & Supp. III 1985)).

**6.** *See id.* (citing 20 C.F.R. §§ 404.1520, 416.920 (1986)).

**7.** *Id.*

**8.** *Id.*

**9.** *Id.*

**10.** *Id.*

**11.** *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 140–41, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)).

**12.** *Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c) (1986)).

**13.** *Id.* at 750–51 (citing 20 C.F.R. §§ 404.1521(b), 416.921(b) (1986)).

**14.** *Id.* at 751.

**15.** *Id.*

lumbar spondylosis, peripheral neuropathy, carpal tunnel syndrome, and hand and knee arthritis. However the ALJ determined there was no evidence of a severe mental impairment, sleep apnea, or high blood pressure before March 31, 2001. Thus, the ALJ proceeded to step three.

In step three, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." [16] If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits.[17] If not, the evaluation proceeds to the fourth step, where the claimant must show that the "impairment prevents [the claimant] from performing work he has performed in the past." [18] If the claimant is able to perform his previous work, he is not disabled.[19] With respect to the third step of the process in this case, the ALJ determined that plaintiff's impairments were not listed or medically equivalent to those listed in the relevant regulations. At the fourth step, the ALJ concluded that plaintiff was not disabled because he was able to perform his past relevant work as a service manager or auto parts sales clerk.

The ALJ did not stop at step four, but proceeded to the fifth and final step of the sequential evaluation process-determining whether the claimant has the residual functional capacity (RFC) "to perform other work in the national economy in view of his age, education, and work experi-

ence." [20] An ALJ is allowed to make a step five determination even if he finds that plaintiff is not disabled at step four.[21] At this point, the ALJ properly shifted the burden of proof to defendant to establish that plaintiff retains the capacity "to perform an alternative work activity and that this specific type of job exists in the national economy." [22] At this step, the ALJ also concluded that plaintiff was not disabled, a conclusion that rested on a finding that plaintiff, despite possessing certain non-exertional limitations, nonetheless could perform a significant number of jobs in the state and national economies, including gate tender, arcade attendant, and office helper.

## IV. Analysis of Plaintiff's Specific Arguments

In his motion, plaintiff contends that the ALJ made three errors in reaching his decision: he erroneously determined that some of plaintiff's impairments were not severe; he failed to adequately support his decision that plaintiff's impairments did not meet or equal a Listed Impairment; and he failed to properly assess plaintiff's credibility, which led him to erroneously determine plaintiff's residual functional capacity and resulting ability to perform work. The Court addresses each of these arguments in turn.

### A. Plaintiff's Severe Impairments

The ALJ determined at step two that plaintiff's mental impairment, sleep

---

**16.** *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d) (1986); *Bowen v. Yuckert,* 482 U.S. at 141, 107 S.Ct. 2287).

**17.** *Id.*

**18.** *Id.* (citing 20 C.F.R. §§ 404.1520(e), 416.920(e) (1986); *Bowen v. Yuckert,* 482 U.S. at 141, 107 S.Ct. 2287).

**19.** *Id.*

**20.** *See id.* (quoting *Bowen v. Yuckert,* 482 U.S. at 142, 107 S.Ct. 2287).

**21.** *Murrell v. Shalala,* 43 F.3d 1388 (10th Cir.1994).

**22.** *See Williams,* 844 F.2d at 751 (citations omitted); *accord White,* 271 F.3d at 1258 (at fifth step, burden of proof shifts to Commissioner to show that claimant retains the functional capacity to do specific jobs).

apnea, and high blood pressure were not severe. Plaintiff disputes the ALJ's finding with regards to high blood pressure and sleep apnea, stating that the ALJ did not support his findings with substantial evidence. The Court agrees with the ALJ's determination with respect to plaintiff's mental impairment and high blood pressure, but not with respect to plaintiff's sleep apnea.

■■ In demonstrating severity, plaintiff "must make a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities, i.e., 'the abilities and aptitudes necessary to do most jobs.' "[23] Plaintiff has the burden at this level to show that the impairment would have more than a minimal effect on his ability to do work activities.[24] Plaintiff must produce medical evidence showing how his impairment affects his ability to work.[25] Plaintiff cites evidence from the record that he has been diagnosed with high blood pressure, but he provided no evidence that his high blood pressure affects his basic work abilities, therefore he has not met his burden to prove that his high blood pressure is a severe impairment. Plaintiff asserts that his sleep apnea caused severe fatigue and produced evidence of tests his doctors performed to determine the severity of his sleep apnea. The ALJ, required to explain how plaintiff did not make a threshold showing, stated that the sleep apnea was not severe because:

> [A] February 2000 sleep study conducted at SomniTech, Inc., indicated the claimant had apnea but did not meet the protocol for continuous pulmonary air pressure, or CPAP, during sleep, and, furthermore, L. Kennedy, M.D., report-

ed in March 2000 that an overnight oximetry evaluation of the claimant showed his lowest oxygen saturation rate was 92 percent, whereas the average is 95 percent.

However, the record reflects that contrary to the ALJ's statement, the physician who interpreted the sleep study found plaintiff's *lowest* saturation rate was 92%, and *plaintiff's* average saturation rate was 95%. Furthermore, the ALJ never explained what the findings he relied on meant, or how they disproved plaintiff's evidence of fatigue. The physician's conclusions from the sleep tests actually seem to suggest that sleep apnea affected plaintiff's basic work abilities. The physician noted that plaintiff had "highly positional obstructive sleep apnea, which is moderately severe. He also has mild hypoxemia." The physician recommended that plaintiff avoid driving or operating heavy equipment until he was adequately treated. This, along with plaintiff's self described fatigue, appears to show that at least at some time after plaintiff's alleged onset date and before his insured status expired, his sleep apnea had more than a minimal effect on his work abilities. Therefore on remand, the ALJ should reconsider plaintiff's sleep apnea as a severe impairment as it was interpreted in the February 2000 sleep study.

### B. The Listing of Impairments

■ Plaintiff's next argument is that the ALJ erred when he determined that plaintiff did not meet a Listed Impairment under 20 C.F.R. Pt. 404, Subpt. P, App. 1. Plaintiff contends that the ALJ erred by not discussing the particular evidence he relied on to determine plaintiff's impair-

---

**23.** *Id.* at 751 (citing 20 C.F.R. §§ 404.1521(b), 416.921(b) (1986); accord *Bowen v. Yuckert,* 482 U.S. at 141, 107 S.Ct. 2287).

**24.** *Id.*

**25.** *Hinkle v. Apfel,* 132 F.3d 1349, 1352 (10th Cir.1997).

ments did not meet a Listing, or by not identifying the Listing he considered, as required by the Tenth Circuit's decision in *Clifton v. Chater*.[26] In *Clifton*, the court held that it was a reversible error for the ALJ not to "discuss the evidence or his reasons for determining that [plaintiff] was not disabled at step three, or even identify the relevant Listing or Listings;"[27] the ALJ cannot rely on a summary conclusion that the plaintiff's impairments did not meet or equal any Listed Impairment, because "[s]uch a bare conclusion is beyond meaningful judicial review."[28]

Here the ALJ stated that plaintiff's impairments did not meet a Listing based on "the implicit conclusions of two State-agency physicians, one of whom reviewed the medical record in March 2001, the other in December 2000, that the claimant had not met or equaled a listing." The ALJ said his decision was further supported by his discussion of the medical evidence; but the ALJ's discussion was no more than a general review of the evidence, without any application to the Listings. Plaintiff does not contend that the ALJ's discussion of the evidence was faulty; rather, he contends that the ALJ erred in not linking his findings at step three to any specific evidence, rendering impossible any review of the ALJ's consideration of the evidence. Plaintiff believes he meets the criteria for current Listing 1.04–Disorders of the Spine, and the ALJ should have, at the least, identified the Listing he considered when determining whether plaintiff met a Listed Impairment.

In applying *Clifton*, the Tenth Circuit has noted that when an ALJ does not specify what Listings he considered, it is difficult to review that determination.[29] Similarly, this court has found it problematic for the ALJ to simply list all the medical evidence after his statement that plaintiff did not meet a Listing, as the ALJ did in this case, because there was no way to tell what evidence he was relying on at step three and what evidence he was relying on at steps four and five.[30] Because it is unclear from the ALJ's decision whether he considered Listing 1.04 or any other Listing, and because he did not link his determination that plaintiff did not meet a Listing to substantial evidence, on remand the ALJ should consider whether plaintiff meets Listing 1.04 or any other Listing the ALJ deems applicable. The ALJ should specifically state which Listings he has considered and link his finding to the evidence in the record.

## C. Assessment of Plaintiff's Credibility

■■■ Plaintiff asserts that the ALJ erred in failing to properly assess his credibility in accordance with the Tenth Circuit's opinion in *Luna v. Bowen*.[31] Under *Luna*, the ALJ must apply a three part test. First, the ALJ must determine whether plaintiff has a pain producing impairment.[32] Second, the ALJ must determine whether there is a loose nexus between the pain alleged and the impairment.[33] Third, the ALJ must determine whether a claimant's subjective complaints are credible, considering the objective medical evidence and such factors

**26.** 79 F.3d 1007 (10th Cir.1996).

**27.** *Id.* at 1109.

**28.** *Id.*

**29.** *Lowe v. Apfel,* 216 F.3d 1087, 2000 WL 807534, *2 (10th Cir.2000) (citing *Clifton*, 79 F.3d at 1009).

**30.** *Bates v. Barnhart,* 222 F.Supp.2d 1252, 1257 (D.Kan.2002).

**31.** 834 F.2d 161 (10th Cir.1987).

**32.** *Luna,* 834 F.2d at 164.

**33.** *Id.*

as: a claimant's persistent attempts to find relief and his willingness to try any treatment prescribed; whether claimant has regular contact with a doctor; claimant's daily activities; claimant's regular use of crutches or a cane; and the dosage, effectiveness, and side effects of a claimant's medication.[34] Moreover, the ALJ must give specific reasons for rejecting a claimant's subjective complaints.[35] Ultimately, credibility determinations "are peculiarly the province of the finder of fact," and should not be upset if supported by substantial evidence.[36]

Plaintiff first argues that the ALJ failed to make proper findings that plaintiff had a pain producing impairment and that there was a loose nexus between the pain and the alleged impairment. Because the ALJ evaluated the evidence to determine whether plaintiff's allegations of pain were credible, the ALJ necessarily must have found that plaintiff had a pain producing impairment and that there was a loose nexus between the impairment and the pain alleged. However, a review of the ALJ's decision in this case reveals that he did not adequately support his finding that plaintiff was not credible. The ALJ considered plaintiff's daily activities, his alleged lack of treatment, and his prior work history. Although the ALJ is not required to discuss each and every factor from *Luna* in his decision,[37] the factors the ALJ relied on here, failed to amount to substantial evidence supporting his determination that plaintiff was not credible.

When discussing plaintiff's activities of daily living, the ALJ noted that plaintiff testified at the June 24, 2002, hearing that he was unable to vacuum or cook, yet on an activities of daily living questionnaire plaintiff filled out on July 3, 2000, he stated that he did cook and vacuum. Defendant argues that these inconsistencies should be enough to discredit plaintiff.[38] However, the Court notes that plaintiff filled out another activities of daily living questionnaire on February 14, 2001, on which he noted that he did not do any household chores and his spouse or a friend cooked for him. Also, upon review of the record it is noted that on the July 2000 questionnaire, plaintiff stated that he cooked with help, and that he sometimes did household chores including vacuuming, so the ALJ's characterization of the statements lacks support. Plaintiff's testimony was not inconsistent with his more recently recorded activities of daily living questionnaire, and the ALJ's reliance on any inconsistencies between the older questionnaire and plaintiff's testimony is unpersuasive.

The ALJ also noted that plaintiff testified or included in his activities questionnaires that he drove, although not more than 30 minutes at a time, and regularly washed his hair, brushed his teeth, bathed and shaved. The ALJ found these activities inconsistent with a disabling upper extremity impairment. Plaintiff noted in the July 2000 activities questionnaire that he needed help in caring for his personal needs, sometimes had problems holding objects or fastening buttons, and shaved only twice a month. In the more recent questionnaire, plaintiff stated that he never shaved, and that he washed his hair 2 to

34. *Barnett v. Apfel,* 231 F.3d 687, 690 (10th Cir.2000) (citing *Luna,* 834 F.2d at 165–66).

35. *White v. Massanari,* 271 F.3d 1256, 1261 (10th Cir.2001) (citing *Kepler v. Chater,* 68 F.3d 387, 390–91 (10th Cir.1995)).

36. *Id.* (citing *Kepler,* 68 F.3d at 390–91).

37. *Thompson v. Sullivan,* 987 F.2d 1482, 1490 (10th Cir.1993).

38. *See Gowell v. Apfel,* 242 F.3d 793, 796 (8th Cir.2001) (stating that plaintiff's complaints to her doctors were inconsistent, which was an acceptable reason for discrediting her).

3 times a week. And, the ALJ failed to mention the third party questionnaires completed by plaintiff's wife, that stated she had to help plaintiff with some of these grooming activities. Also, even if these activities are inconsistent with disabling upper extremity problems, in finding all of plaintiff's disabling complaints incredible, the ALJ failed to explain how plaintiff's daily activities discredit his complaints about his other impairments.

 The ALJ stated that plaintiff's asserted need to lie down during the day was not credible; because plaintiff was never advised by a doctor to lie down, his asserted need to lie down was a choice, not a necessity. However, the mere fact that plaintiff was never told by a doctor to lie down does not render incredible, his asserted need to lie down as a result of his pain. The Tenth Circuit has held that it was improper for the ALJ to rely on the fact that no doctor had placed a claimant on a restriction of lying down stating, "The fact that no physician has observed a claimant throughout the day to verify the claimant's reported activity and rest periods cannot be used to discredit a claimant's report." [39]

The ALJ discounted plaintiff's credibility because at the hearing plaintiff testified that he started having muscle spasms in his back in 1999, yet he was not prescribed anti-spasm medication until 2002. Plaintiff notes that he took numerous pain medications before he first took medication specifically for spasms. He also tried physical therapy treatments. Instead of the ALJ noting all the treatment that plaintiff had received, which could have weighed in fa-

vor of his credibility, the ALJ chose to isolate one symptom and plaintiff's lack of medication for that symptom. The ALJ may not pick and choose which evidence to rely on and ignore evidence favorable to plaintiff.[40]

The ALJ's credibility analysis also relied on a previous disability application plaintiff filed. The ALJ stated that in the previous application, plaintiff claimed disability since April 1991, yet "he worked some 40 hours a week from 1992 to February 1998." Plaintiff notes that in the current application he is not claiming disability during the time the ALJ asserts he was working full time. Plaintiff testified that his last full time employment was as a sheet metal worker in 1991. His most recent prior work history was part time work, but he had not been employed at all since 1999. Plaintiff notes that he had a steady work history prior to his disability claims, a factor which could weigh in favor of plaintiff's credibility.[41]

 The ALJ cannot discuss only the evidence supporting his decision, but must also discuss the "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." [42] Plaintiff believes the ALJ should have considered plaintiff's persistent attempts to find relief, regular contact with a doctor, willingness to try any treatment prescribed, and limited daily activities as testified to by plaintiff and the third party witnesses. The Court agrees that the ALJ should consider these factors on remand.

 Plaintiff argues the ALJ erred in not considering how plaintiff's psycho-

**39.** *See Hinton v. Massanari*, 13 Fed.Appx. 819, 823, 2001 WL 744971, *4 (10th Cir. 2001).

**40.** *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir.2004) (citing *Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir.1984)).

**41.** *Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir.1995) (stating that it is proper for the ALJ to use a claimant's *sporadic* prior work history against him).

**42.** *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir.1996).

logical disorder affected his credibility; however, the Court agrees with the ALJ that plaintiff did not make a sufficient showing of a psychological basis for his complaints. The Court also does not agree with plaintiff's contention that the ALJ should have invoked the Tenth Circuit's four part test in *Frey v. Bowen*[43] for determining when a plaintiff can be found not disabled for failing to follow a prescribed treatment. The *Frey* test can be used in credibility determinations,[44] but the Tenth Circuit has held that this test is not required when the ALJ is simply considering "what attempts plaintiff made to relieve his pain . . . in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling."[45] Plaintiff did not present any evidence that the ALJ relied on plaintiff's failure to pursue a particular treatment for his pain, and therefore the ALJ need not apply the *Frey* test.

■ Because the ALJ did not make proper findings regarding plaintiff's credibility, his RFC determination was not sufficiently supported by substantial evidence. Therefore, it is possible that the ALJ's hypothetical questions to the Vocational Expert (VE) did not contain all of plaintiff's limitations. So in addition to reconsidering plaintiff's credibility, the ALJ must reconsider plaintiff's RFC and resulting ability to perform his past relevant work or other jobs in the national economy.

## V. Conclusion

Therefore, the Court finds that this action should be reversed and remanded pursuant to sentence four of 42 U.S.C.

§ 405(g) to conduct further proceedings as follows:

> Upon receiving the court's final order of remand, the Appeals Council of the Social Security Administration will remand this case and direct the ALJ to reassess the severity of plaintiff's impairments in accordance with the statute and regulations. The ALJ should reconsider the severity of plaintiff's sleep apnea; reconsider whether plaintiff meets a Listed Impairment, stating the Listing(s) considered and citing evidence relied on in making the determination; and reassess plaintiff's credibility. After reconsidering these factors, the ALJ must then determine plaintiff's RFC and resulting ability to perform his past relevant work or other jobs in the national economy.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's decision denying plaintiff disability benefits is **REVERSED AND REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order.

**IT IS SO ORDERED.**

**43.** 816 F.2d 508, 517 (10th Cir.1987).

**44.** *See Goodwin v. Barnhart*, 195 F.Supp.2d 1293, 1295 (D.Kan.2002) (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993); *Ragland v. Shalala*, 992 F.2d 1056, 1059–60 (10th Cir.1993)).

**45.** *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir.2000) (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir.1991); *Luna v. Bowen*, 834 F.2d 161, 165–66 (10th Cir.1987)).