Benjamin F. SIMMONS, III, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. 03–4112–JAR.

United States District Court,
D. Kansas.

July 29, 2004.

Steven M. Tilton, Tilton & Tilton, Chtd., Topeka, KS, for Plaintiff.

Tanya S. Wilson, Office of United States Attorney, Topeka, KS, for Defendant.

### MEMORANDUM & ORDER

ROBINSON, District Judge.

Plaintiff Benjamin F. Simmons, III, brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of Defendant Commissioner of Social Security's denial of his application for a period of disability and disability insurance benefits under Title II of the Social Security Act (Act) and supplemental security income under Title XVI of the Act. According to plaintiff, defendant failed to adequately support his decision that plaintiff's limitations did not meet or equal an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Part 404 (Listing of Impairments or Listing), failed to properly assess plaintiff's credibility, and failed to correctly determine plaintiff's mental and physical residual functional capacity (RFC). As explained in more detail below, the Court concludes that the decision, in part, is based on insubstantial evidence and/or on an incorrect application of the law, and therefore the Court reverses and remands this case.

### I. Procedural Background

On November 17, 1999, plaintiff protectively filed an application for supplemental security income, claiming disability since September 1, 1994. On the next day, November 18, 1999, plaintiff protectively filed an application for a period of disability and disability insurance benefits claiming disability as of November 15, 1998, due to: high blood pressure, diabetes, hepatitis C, kidney and liver problems, skin problems, and back and leg problems. The applications were denied both initially and upon reconsideration. After a hearing at which plaintiff and his counsel were present, an administrative law judge (ALJ) denied all benefits on the basis that plaintiff was not under a "disability" as defined by the Act. Plaintiff's request for review by the Appeals Council was denied. Thus, the ALJ's decision is the final decision of defendant.

In his decision denying benefits, the ALJ considered only the period of March 20, 1999 through March 22, 2002, the date of his decision. Plaintiff had previously filed applications for disability, disability insurance benefits, and supplemental security income in 1997; those applications were denied by another ALJ on March 19, 1999; and the Appeals Council denied review. Thus, the ALJ properly determined

that the doctrine of res judicata precluded his consideration of all claims of disability concerning periods prior to March 19, 1999.

## II. Standard of Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the correct legal standards.[1] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] In the course of its review, the court may not reweigh the evidence or substitute its judgment for that of defendant.[3]

## III. Relevant Framework for Analyzing Claim of Disability and the ALJ's Findings

"Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ."[4] The Social Security Act further provides that an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."[5]

The Social Security Administration has established a five-step sequential evaluation process for determining whether a claimant is disabled,[6] and the ALJ in this case followed the five-step process. If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.[7] At step one the ALJ determines whether the claimant is presently engaged in substantial gainful activity.[8] If he is, disability benefits are denied.[9] If he is not, the ALJ must proceed to the second step.[10] Here, the ALJ determined that plaintiff was not engaged in substantial gainful activity and, thus, properly proceeded to the second step.

The second step of the evaluation process involves a determination of whether "the claimant has a medically severe impairment or combination of impairments."[11] This determination is governed by certain "severity regulations," is based on medical factors alone, and, consequently, does not include consideration of such vocational factors as age, education, and work experience.[12] Pursuant to the severity regulations, the claimant must make a threshold showing that his medically de-

1. *See White v. Massanari,* 271 F.3d 1256, 1257 (10th Cir.2001) (citing *Castellano v. Sec'y of Health & Human Services,* 26 F.3d 1027, 1029 (10th Cir.1994)).

2. *Id.* (quoting *Castellano,* 26 F.3d at 1028).

3. *Id.*

4. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir.1988) (quoting 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (1982)).

5. *Id.* (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (1982 & Supp. III 1985)).

6. *See id.* (citing 20 C.F.R. §§ 404.1520, 416.920 (1986)).

7. *Id.*

8. *Id.*

9. *Id.*

10. *Id.*

11. *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 140–41, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)).

12. *Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c) (1986)).

terminable impairment or combination of impairments significantly limits his ability to do basic work activities.[13] If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits.[14] If, on the other hand, the claimant presents medical evidence and makes the de minimis showing of medical severity, the ALJ proceeds to step three.[15] The ALJ in this case concluded that plaintiff satisfied the severity requirement based on the following combination of impairments: arthralgias of the low back and left shoulder; hepatitis C; depression; hypertension, controlled; and diabetes mellitus, type II, controlled. Thus, the ALJ proceeded to step three.

In step three, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity."[16] If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits.[17] If not, the evaluation proceeds to the fourth step, where the claimant must show that the "impairment prevents [the claimant] from performing work he has performed in the past."[18] If the claimant is able to perform his previous work, he is not disabled.[19] With respect to the third step of the process in this case, the ALJ determined that plaintiff's impairments were not listed or medically equivalent to those listed in the relevant regulations. At the fourth step, the ALJ concluded that plaintiff was unable to perform past relevant work.

Thus, the ALJ proceeded to the fifth and final step of the sequential evaluation process-determining whether the claimant has the RFC "to perform other work in the national economy in view of his age, education, and work experience."[20] At that point, the ALJ properly shifted the burden of proof to defendant to establish that plaintiff retains the capacity "to perform an alternative work activity and that this specific type of job exists in the national economy."[21] At this step, the ALJ concluded that plaintiff was not disabled, a conclusion that rested on a finding that plaintiff, despite possessing certain nonexertional limitations, nonetheless could perform a significant number of jobs in the state and national economies, including bench assembly, packager, and optical goods assembler.

## IV. Analysis of Plaintiff's Specific Arguments

In his motion, plaintiff contends that the ALJ erred in failing to: (1) adequately support his decision that plaintiff's mental and physical limitations did not meet a Listing; (2) properly assess plaintiff's credibility; and (3) correctly determine plaintiff's mental and physical residual functional capacity (RFC). The Court addresses each of these arguments in turn.

13. *Id.* at 750–51 (citing 20 C.F.R. §§ 404.1521(b), 416.921(b) (1986)).

14. *Id.* at 751.

15. *Id.*

16. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d) (1986); *Bowen v. Yuckert,* 482 U.S. at 141, 107 S.Ct. 2287).

17. *Id.*

18. *Id.* (citing 20 C.F.R. §§ 404.1520(e), 416.920(e) (1986); *Bowen v. Yuckert,* 482 U.S. at 141, 107 S.Ct. 2287).

19. *Id.*

20. *See Williams,* 844 F.2d at 750.

21. *See id.* (citations omitted); *accord White,* 271 F.3d at 1258 (at fifth step, burden of proof shifts to Commissioner to show that claimant retains the functional capacity to do specific jobs).

## A. The Listing of Impairments

Plaintiff argues that the ALJ erred when he determined that plaintiff's condition did not meet a Listed Impairment under 20 C.F.R. Pt. 404, Subpt. P, App. 1, and without discussing the particular evidence he relied on, as required by the Tenth Circuit's decision in *Clifton v. Chater.*[22] In *Clifton*, the court held that it was a reversible error for the ALJ to not "discuss the evidence or his reasons for determining that [plaintiff] was not disabled at step three, or even identify the relevant Listing or Listings."[23] The ALJ cannot rely on a summary conclusion that the plaintiff's impairments did not meet or equal any Listed Impairment, because "[s]uch a bare conclusion is beyond meaningful judicial review."[24]

### 1. Plaintiff's Physical Impairments

In his decision, the ALJ stated that plaintiff had not identified any objective medical evidence demonstrating an impairment or combination of impairments that met or equaled a specific Listing. The ALJ identified which listings he considered for each of plaintiff's severe impairments. The ALJ found "no objective medical evidence of record demonstrating medical findings consistent with listing level severity for any of these impairments." The record demonstrates that ALJ, in fact, discussed his reasons for finding that plaintiff did not meet a Listing. Plaintiff did not identify, and no objective evidence demonstrated, a listing level severity for plaintiff's impairments. The ALJ in fact considered particular Listings. This Court's

review of the record confirms that there was no evidence demonstrating that plaintiff met or equaled a Listing.

It is plaintiff's duty to prove that he is disabled at step three. Plaintiff contends that there was evidence that he met Listing 5.05–Chronic Liver Disease. But in now identifying such evidence, plaintiff does not explain how this evidence demonstrates that he met Listing 5.05. This Court is not convinced that the evidence shows the required "[c]onfirmation of chronic liver disease by liver biopsy" and one of the other three impairments needed to meet the Listing. Nor does the record reveal evidence of any of the other requirements for that particular Listing. Thus, the Court is satisfied that the ALJ correctly found that there was no objective evidence that plaintiff's impairments were of Listing level severity.

### 2. Plaintiff's Mental Impairment

Plaintiff also argues that the ALJ did not properly evaluate his mental impairment under the Listing of Impairments. When assessing how a claimant's mental impairment affects his disability determination, the ALJ must follow the procedures set out in 20 C.F.R. § 404.1520a and 20 C.F.R. § 416.920a and document his findings and the evidence on which he relied.[25] The ALJ's "decision must include a specific finding regarding the degree of limitation in each of the functional areas described in paragraph (c) of this section."[26] Those functional areas are: activities of daily living; social functioning; concentration persistence, or pace; and episodes of decompensation.[27] Regardless

---

**22.** 79 F.3d 1007 (10th Cir.1996).

**23.** *Id.* at 1109.

**24.** *Id.*

**25.** *See Cruse v. Dep't of Health & Human Services,* 49 F.3d 614, 617 (10th Cir.1995).

**26.** 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2).

**27.** *Id* §§ 404.1520a(c)(3), 416.920a(c)(3).

of whether the ALJ's decision is supported by substantial evidence, he must also follow the appropriate legal standards; and failure to follow these standards can be grounds for reversal.[28]

■ The ALJ failed to specifically state what degree of limitation plaintiff had in each of the functional areas. When considering plaintiff's mental impairment under Listing 12.04, the ALJ stated that he did "not find that this impairment results in two or more of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or three or more repeated episodes of decompensation, each of extended duration." He further stated that plaintiff did not establish the presence of the "C" criteria for that Listing. While his finding corresponds with not meeting Listing 12.04, such finding does not satisfy the ALJ's legal requirement to describe plaintiff's limitation in each functional area.[29] This requirement is also necessary for the ALJ's analysis and determination of RFC. Thus, the ALJ has not complied with the legal standard requiring a specific finding as to the degree of limitation in the four functional areas. On remand, the ALJ must do so.

### B. Assessment of Plaintiff's Credibility

Before determining plaintiff's RFC, the ALJ assessed the credibility of plaintiff's allegations of disabling symptoms and determined that those allegations were not fully credible. Specifically the ALJ found that "although the record supports finding that the claimant has physical and mental impairments imposing some work-related restrictions, it does not support finding that they are work preclusive." Plaintiff argues that this determination was not supported by substantial evidence, but the Court determines that it was.

■ When assessing credibility, the ALJ must consider the objective medical evidence and such factors as: a claimant's persistent attempts to find relief and his willingness to try any treatment prescribed; whether claimant has regular contact with a doctor; claimant's daily activities; the dosage, effectiveness, and side effects of a claimant's medication; and subjective measures of credibility that are peculiarly within the judgment of the ALJ.[30] Moreover, the ALJ must give specific reasons for rejecting a claimant's subjective complaints.[31] Ultimately, credibility determinations "are peculiarly the province of the finder of fact," and should not be upset if supported by substantial evidence.[32]

The ALJ's assessment was based on several specific factors including the medical evidence; the physicians' and psychologists' opinions; inconsistencies between plaintiff's testimony regarding his daily activities and statements made to a psychologist; inconsistencies between plaintiff's testimony about his symptoms and side effects, and the persistence with which he complained of these problems to his treating physicians; and plaintiff's sporadic work history prior to his alleged onset date. Plaintiff has not shown how this assessment was in error.

28.  Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991).

29.  20 C.F.R. §§ 404.1520a, 416.920a.

30.  Luna v. Bowen, 834 F.2d 161, 165–66 (10th Cir.1987); Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir.1988); Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir.2000) (citing Luna, 834 F.2d at 165–66).

31.  White v. Massanari, 271 F.3d 1256, 1261 (10th Cir.2001) (citing Kepler v. Chater, 68 F.3d 387, 390–91 (10th Cir.1995)).

32.  Id. (citing Kepler, 68 F.3d at 390–91).

■ Plaintiff alleges that it was improper for the ALJ to rely on his minimal prior work history as evidence that he had poor work motivation. Plaintiff argues that there could be other reasons for his poor work record, such as prior disability claims. But none of plaintiff's prior disability claims resulted in a determination of disability. And, as the ALJ noted, plaintiff had a sporadic work history even before his alleged onset of disability. This is evidence properly considered in discounting plaintiff's credibility.[33]

■ Plaintiff also challenges the ALJ's assessment of his activities of daily living. The ALJ noted that at the October 2001 hearing, plaintiff "characterized his lifestyle as quite restricted." The ALJ rejected plaintiff's characterization. The ALJ found it notable that in September 2000, plaintiff had described to a consulting psychologist, a much more active lifestyle, inconsistent with the claimed disability. Plaintiff argues that his statements to the consulting psychologist in September 2000 were accurate, but that his activity level changed between then and the October 2001 hearing. Indeed, in November 2000, plaintiff completed a daily living questionnaire in which he described more restricted activities. Furthermore, plaintiff notes that the consulting psychologist failed to note the duration and frequency with which plaintiff performed the described activities. Of course, the psychologist's report was a recitation of plaintiff's self-reported *daily* activities. Nevertheless, it is the ALJ's duty to resolve conflicts in the evidence, and it is the Court's duty to determine whether the ALJ had substantial evidence for his findings.[34] The ALJ's credibility determination based on daily activities does not find substantial support in the evidence.

But, other factors the ALJ relied upon do find substantial evidentiary support for his ultimate determination of credibility. The ALJ rejected plaintiff's asserted need to lie down during the day as not credible, because no physician ever directed plaintiff to do this. The mere lack of a doctor's order to lie down is not dispositive. The Tenth Circuit has noted "[t]he fact that no physician has observed a claimant throughout the day to verify the claimant's reported activity and rest periods cannot be used to discredit a claimant's report."[35] But other evidence the ALJ relied on supports his discrediting of this particular complaint. Plaintiff partly attributed his need to lie down to swelling in his knee and foot. Yet plaintiff did not persistently complain of this symptom during numerous doctor visits. Plaintiff also attributed his need to lie down during the day to his difficulty in sleeping. Plaintiff complained to doctors about his problems sleeping. But, plaintiff also complained that his pain medications made him sleepy. And while plaintiff asserts that hepatitis C is known to cause "extreme amounts of fatigue," the authority he cites to states that "[h]epatitis, chronic active ... may cause vague feelings of tiredness or of being sick."[36] Furthermore, the ALJ specifically noted that the record did not reveal any serious problems related to plaintiff's diagnosis of hepatitis C. Overall the ALJ stated suffi-

33. *See Bean v. Chater,* 77 F.3d 1210, 1213 (10th Cir.1995) (citing Soc. Sec. Reg. 88–13).

34. *See Gleason v. Apfel,* No. 98–4124, 1999 WL 714172, *4 (D.Kan.1999) (citing *Reyes v. Bowen,* 845 F.2d 242, 245 (10th Cir.1988); *Washington v. Shalala,* 37 F.3d 1437, 1439 (10th Cir.1994)).

35. *See Hinton v. Massanari,* 13 Fed. Appx. 819, 823, 2001 WL 744971, *4 (10th Cir. 2001).

36. Pl. Br. at 24 n. 4 (citing *Encyclopedia of Medicine,* The American Medical Association, Random House, New York, New York, 1989, p. 532–533).

cient evidence for his determination that plaintiff's need to lie down was not credible.

The ALJ's credibility determination was further justified with respect to plaintiff's complaints about his medications. Plaintiff complained of two side effects of his medication, drowsiness and frequent urination. As the ALJ noted, during the course of his treatment, plaintiff made few complaints about frequent urination. And, plaintiff's complaint about drowsiness was inconsistent with his complaints about problems sleeping. Overall, the ALJ's credibility determination was based on substantial evidence.

## C. Plaintiff's Residual Functional Capacity

Before the ALJ may determine whether a claimant has the ability to return to his past work or other work in the national economy, the ALJ must determine a claimant's RFC. Plaintiff challenges the ALJ's determination of his mental RFC and physical RFC. Mentally, the ALJ determined plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions. Plaintiff contends that the ALJ erred in failing to consider a Psychiatric Review Technique form (PRT) and a Mental RFC (MR) assessment filled out by a non-examining psychologist who reviewed his medical records. On the PRT, the psychologist determined plaintiff was moderately limited by difficulties in maintaining concentration, persistence, or pace. On the MR, the psychologist determined plaintiff was moderately limited in his ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; and make simple work-related

decisions. The psychologist determined that other functions were mildly limited or not significantly limited.

■ The ALJ stated that he considered and gave weight to the medical evidence, which he found consistent with and supported by the findings, opinions, and assessments of the non-examining state agency psychologists. But the ALJ did not discuss or explain why his determination of mental RFC did not include all of the mental limitations found by the psychologists. The Court cannot weigh the evidence. The ALJ must assess all of the psychologists' opinions, discuss the reasons for the weight given to each,[37] and state his specific findings regarding plaintiff's degree of limitation in each of the four functional areas.[38] Thus, this case must be remanded to the ALJ, so that he can specifically address the limitations in the psychologist's report, specifically state his findings regarding each of the four functional areas, and determine plaintiff's resulting RFC. Then the ALJ must determine whether, given this RFC, plaintiff is able to perform work available in the national economy.

Plaintiff further requests a remand for an immediate award of benefits, based on testimony by the Vocational Expert (VE) that plaintiff could not perform any jobs in the national economy. But this testimony was based on questions posed by plaintiff's counsel, that incorporated mental limitations not supported by the evidence. For example, plaintiff's counsel asked the VE about a person who "often" had difficulties in concentration, persistence, and pace; but the psychologist opined that plaintiff had "moderate" limitations in this area. And, plaintiff's counsel's questions to the VE included more limitations than those in

37. *See Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir.2004) (quoting *Watkins*, 350 F.3d at 1300–01; Soc. Sec. Reg. 96–2p).

38. 20 C.F.R. §§ 404.1520a, 416.920a.

the psychologist's report. Thus the VE's testimony is not based on questions finding substantial support in the record.

Plaintiff also challenges the physical RFC. Physically, the ALJ determined that plaintiff could: lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for 15 minutes continuously and 2 hours total in an 8–hour work day; sit for 6 hours in an 8–hour work day with normal breaks and rest periods; never use ladders and scaffolds; never work in high, unprotected work areas; never work around dusts, fumes, or other pulmonary irritants; and occasionally stoop, squat, kneel, crawl, and climb stairs.

■ Plaintiff contends that the ALJ erred in failing to explain why he rejected an opinion that recommended plaintiff limit his physical activities to those that did not require lifting, pushing, pulling, or stooping. Plaintiff notes that SSR 96–6p advises that if a claimant has a complete inability to stoop, typically that indicates disability. But, the opinion or evidence that plaintiff is referencing is merely a nurse's notation on a prescription slip. This is not evidence from an "acceptable medical source."[39] Therefore, it is not evidence entitled to any controlling weight.[40] The record reveals that the ALJ considered this evidence, but did not rely on it because it was not a controlling medical opinion and it was contradicted by other substantial evidence in the record. Thus the ALJ did not err in rejecting this notation on the prescription slip.

Finally plaintiff argues that the ALJ's RFC determination was contrary to evidence that plaintiff provided to the Appeals Council after the ALJ's decision.

Evidence submitted to the Appeals Council but not to the ALJ, is evidence that becomes part of the record for this Court's review,[41] but only to the extent that the evidence relates to the time period on or before the ALJ's decision was rendered.[42] Plaintiff is referring to evidence relating to the time period May 13, 2002 to April 7, 2003. Because this time period is antecedent to the ALJ's March 22, 2002 decision, it is not properly before this Court. This evidence includes a letter dated April 7, 2003, which mentions that testing on March 19, 2002, resulted in the *current* diagnosis of severe impairment of walking and ability to work. It appears, however, that the March 19, 2002 testing did not relate back to the time period on or before the ALJ's March 22, 2002 decision. Thus, the Appeals Council appropriately concluded that the evidence submitted after the ALJ's decision was either duplicative or pertained to the period after the ALJ's decision, thus warranting no change in the ALJ's findings. The Appeals Council's determination was supported by substantial evidence, and this evidence does not refute the ALJ's final decision.

## V. Conclusion

Therefore, the Court finds that this action should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to conduct further proceedings as follows:

Upon receiving the court's final order of remand, the Appeals Council of the Social Security Administration will remand this case and direct the ALJ to reassess the severity of plaintiff's impairments in accordance with the statutes and regula-

---

**39.** 20 C.F.R. §§ 404.1513(a), 416.913(a).

**40.** *Id.* §§ 404.1527, 416.927.

**41.** *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir.1994).

**42.** *Id.; see also, Tollett v. Barnhart,* 60 Fed. Appx. 263, 264–64, 2003 WL 1473565, *1 (10th Cir.2003).

tions. The ALJ should reconsider plaintiff's mental impairments in accordance with 20 C.F.R. §§ 404.1520a, 416.920a, including determining plaintiff's degree of limitation in each of the four functional areas. The ALJ should also consider the consulting psychologist's PRT form and Mental RFC assessment when determining plaintiff's mental limitations. He must state the specific evidence he relies on to make his determinations. After the ALJ reassesses plaintiff's mental impairments, he must determine whether plaintiff's impairments meet a Listing, and if not, he must determine plaintiff's RFC and resulting ability to work.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's decision denying plaintiff disability benefits is **REVERSED AND REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order.

**IT IS SO ORDERED.**